Donald Gene ARKLE, Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NUMBER ONE OF TULSA COUNTY, Oklahoma, a/k/a Tulsa Public Schools,

the Board of Review for the Oklahoma Employment Security Commission; and the Oklahoma Employment Security Commission, Appellants.

No. 70048.

Court of Appeals of Oklahoma, Division No. 3.

Nov. 21, 1989.

As Corrected Nov. 28, 1989.

David L. Fist and Andrea K. Allbritton, Tulsa, for appellants.

Thomas E. Salisbury, Tulsa, and Richard B. Wilkinson, Oklahoma City, for appellee.

## MEMORANDUM OPINION

HANSEN, Presiding Judge:

This is an appeal from a decision of the trial court ruling that an employee's acts did not constitute misconduct which would disqualify him from receiving unemployment benefits under the Oklahoma Employment Security Act.

Donald Gene Arkle (Appellee) was employed by Independent School District Number One of Tulsa County (Appellant) for approximately five years until his termination on September 20, 1986. During that time, Appellee was employed in the transportation department as a lot crewman. One of the job responsibilities of a lot crewman is to be a substitute school bus driver. Oklahoma law requires that all school bus drivers obtain a certificate issued by the Oklahoma State Department of Education prior to their employment. Before a certificate will be issued, however, the driver must take and pass an annual physical examination. Persons who do not obtain a certificate cannot be employed as school bus drivers.

Appellant gave Appellee written notice of the physical examination scheduled for him on August 12, 1986. Appellee did not receive the written notice. However, he admitted he knew of his scheduled physical examination at least two weeks in advance.

Appellee worked until August 1, 1986, and was not scheduled to recommence work until September 2nd or 3rd, 1986. It was Appellee's understanding that the physical examination and the drug screening test, also required, did not need to be done at any certain time, as long as they were done prior to his returning to work in September. He testified that he fully intended to have the physical examination and drug screening test done before returning to work.

Approximately one week before his scheduled physical examination, Appellee notified his supervisor he would be out of town on the date of his physical examination, and he would have his private doctor perform the physical examination. His supervisor told him this was proper, but he would need to get a form from the transportation department for the drug screening test. Appellee testified he never went to the transportation department to pick up the form.

At this same time, Appellee went to Kansas City to visit his ill mother. Upon returning from Kansas City on approximately August 20, Appellee contacted the head dispatcher who told him that before he returned to work on September 2nd or 3rd, he would have to go to his own doctor for the physical examination and drug screening test.

Appellee testified he visited his private physician upon his return from Kansas City on August 20. He learned at this point he was ill and needed to be hospitalized.

On August 28, 1986, Appellee was admitted to the hospital suffering from hepatitis. His admission to the hospital was reported to the school district associate superintendent of personnel by his doctor in a letter which stated Appellee would be confined for approximately thirty (30) days. Throughout Appellee's stay in the hospital, all of his drug screening tests were negative. His physician conducted a physical exam and found Appellee's health was good, with the exception of the hepatitis.

Appellee testified he would have taken the results of his examination to Appellant but was hospitalized and could not do so.

Appellee did not furnish a copy of his physical examination to Appellant but told his physician he needed the physical examination for his job. In addition, he testified he neither instructed his physician to send the results of this physical examination nor told him to send any paperwork relating to the physical examination to Appellant.

On August 20, 1986, Appellee was recommended for termination for having failed to take the annual physical examination and drug screening test. The Oklahoma Education Association field service representative was present for Appellee at his termination hearing. At the hearing the representative presented copies of all Appellee's hospital drug use tests to the school board. After hearing the evidence presented, the school board upheld Appellee's termination.

The Employment Security Commission granted unemployment benefits to Appellee. Appellant appealed this decision to the appeal tribunal which reversed the granting of benefits. Appellee then appealed to the Board of Review which affirmed the appeal tribunal's denial of benefits. Then, Appellee filed a petition for review in the district court. The trial court ruled Appellee's acts did not constitute misconduct which would disqualify him from receiving unemployment benefits. Appellant appeals this decision.

■ Appellant advises it terminated Appellee for failing to provide it with, or notify it of, the results of his required physical examination and drug use test, and that this deliberate failure to satisfy the requirements of his continued employment clearly constitutes willful misconduct. *See* 40 O.S.1981 § 2-406. It contends the evidence clearly demonstrates Appellee took none of the steps to ensure his employer's best interests were protected, and that the trial court erred in ruling Appellee's acts did not constitute "misconduct" which would disqualify him from receiving unemployment benefits.

In *Tynes v. Uniroyal Tire Company*, 679 P.2d 1310 (Okla.App.1984) this Court defines "misconduct" as:

> Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

Appellee's conduct does not rise to the level required in *Tynes, supra.* The record reflects no willful or wanton disregard of Appellant's interests; it reflects no carelessness or negligence of such a degree as to manifest equal culpability, wrongful intent or evil design. Appellee obtained the physical and the drug screening test. And although he did not send the results to Appellant, his illness and that of his mother's are mitigating factors to be considered by the Board of Review.

The purpose of unemployment compensation legislation is to provide some form of relief to those unemployed through no fault of their own. *Vester v. Bd. of Review Okl. Emp. Sec.*, 697 P.2d 533 (Okla.1985). However, the adoption by Appellant of a definition of misconduct which requires only an act or course of conduct detrimental to its best interests, without the element of willfulness or culpable negligence, is contrary to the expressed purpose and intent of the Oklahoma Employment Security Act, and is erroneous as a matter of law. *Vester, supra.*

■ Appellant further contends the trial court improperly substituted its judgment for that of the Board of Review in reversing its decision that Appellee committed willful misconduct. In *Vester, supra,* the Supreme Court held:

> We have also held the district court sits as an appeal tribunal and its jurisdiction is limited to the consideration of the transcript and the argument of the respective attorneys thereon. We have also held

that in an appeal, such as was perfected herein, the district court is limited to determinations whether an error of law was committed in the hearing and whether or not the findings are supported by the evidence introduced....

We have already determined herein an error of law was committed by the appeal tribunal and the review board, both of which found Appellee's acts to be willful misconduct disqualifying Appellee from benefits. They did not apply the proper legal test of willful misconduct, or if they did, they made a clearly erroneous legal conclusion. As a matter of law, the trial court had the duty to correct the incorrect legal conclusions of the appeal tribunal and the Board of Review and order the payment of unemployment benefits to Appellee. It did properly correct the legal conclusions and properly order payment of unemployment benefits to Appellee.

AFFIRMED.

BAILEY, C.J., and REYNOLDS, J., concur.