GRACE DRILLING
COMPANY, Appellant,

v.

Timothy NOVOTNY; Oklahoma Employment Security Commission, Glenda Owen, Adjuster, Elaine Williamson, Adjuster; Appeal Tribunal of the Oklahoma Employment Security Commission, Calvin B. Crawford, Hearing Officer; and Board of Review, Oklahoma Employment Security Commission, Gary E. Payne, Chairman, and Brad Morelli, Vice Chairman, Appellees.

No. 72995.

Court of Appeals of Oklahoma,
Division No. 2.

March 12, 1991.

Rehearing Denied April 9, 1991.

Certiorari Denied June 11, 1991.

Jim T. Priest, Sharon K. O'Roke, David W. Kirk, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellant.

Kathryn A. Rodgers, Kade A. McClure, Legal Aid of Western Oklahoma Lawton, for appellee Novotny.

Margaret R. Dawkins, Oklahoma City, for appellee Oklahoma Employment Security Com'n.

MEANS, Judge.

Employer Grace Drilling Company brought this action in the District Court of Grady County to review an order of defendant Board of Review of the Oklahoma Employment Security Commission granting unemployment benefits to defendant Timothy J. Novotny. The trial court affirmed the order, and Grace has appealed. Having reviewed the record and applicable law, we affirm.

Grace is in the business of drilling for oil. Grace's written policies include prohibitions against either reporting for work or being on duty "when tested positive on a drug screen" and for "[e]ntry upon Company premises or being at work ... under the influence of alcohol, drugs, or controlled substances.... 'Under the influence' is defined for purposes of this policy as ... having any detectable level of alcohol, drugs or controlled substances, or any combination thereof, in the body." Grace further requires employees to consent to random "pre-/post-employment" substance testing.

Defendant Novotny was a derrick hand who had worked for Grace for six years. In August 1987, upon returning from a two-week break, he was administered a random urine screening which tested positive for marijuana. Based solely on the test results, Grace then terminated his employment. It was undisputed that Novotny had exhibited no signs of impairment. He had never been otherwise reprimanded for deficient job performance.

Novotny then applied for unemployment benefits, which the initial OESC adjuster granted. Grace appealed this determination to the appeal tribunal, which found that Novotny had violated Grace's substance policy and reversed the adjuster's decision. Novotny then appealed that decision to the OESC Board of Review. The

Board reversed the tribunal's order and allowed benefits, concluding that "before benefits are denied for failing a drug test, it should be shown that: (1) proper testing and confirmation procedures have been followed and (2) there is clear objective evidence of impairment, such as bizarre behavior or loss of productivity." Grace then unsuccessfully appealed to the district court.

In reviewing cases from the Board of Review, the jurisdiction of this court is limited to questions of law. 40 O.S.1981 § 2–610(1). The Board's findings of fact are conclusive if supported by evidence. *Id.*

Grace's primary proposition of error asserts that Novotny was terminated for misconduct connected with his last work and is thus disqualified for unemployment benefits by 40 O.S.1981 § 2–406. Grace argues that the definition of "misconduct" as established in *Vester v. Board of Review of Oklahoma Employment Security Commission,* 697 P.2d 533, 537 (Okla.1985), encompasses "conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employees." Grace reasons that (1) as its policy is reasonably calculated to ensure company safety, it has a "right to expect" compliance, and (2) exposure to drugs can only be deliberate and thus a willful violation of company policy. Grace therefore concludes that Novotny's violation of the known company prohibition against reporting to work with detectable levels of marijuana in his system constitutes statutory misconduct per se, and that the trial court erred in affirming the award of benefits.

■ Whether an employee's action constitutes statutory misconduct must be determined by reference to the conduct proscribed in the controlling statute. An employer may not, merely by passing a rule, disqualify as misconduct actions which, absent the rule, would not meet the statutory definition. *Glide Lumber Products Co. v. Employment Div.,* 86 Or.App. 669, 741

P.2d 907, 910 (1987); *Robinson v. Brown*, 129 So.2d 45 (La.Ct.App.1961).

Resolution of whether Novotny's actions constituted "misconduct connected with his work," depends on the actual conduct allegedly bringing him within the statutory definition. Assuming, *arguendo*, that Novotny did in fact have detectable levels of marijuana in his system when he reported to work on the test date, the question of whether his off-duty ingestion of marijuana is work-connected misconduct raises issues different from the question of whether his arrival at work in a physical state violative of Grace's rule is misconduct.

In order for off-duty action to constitute disqualifying misconduct, the action must, even though outside the course of employment, directly and adversely impact on the employer's interests. For example, a truck driver's off-duty drinking, which could have potentially jeopardized an agreement between his employer and its insurer, was held to be misconduct, *Gregory v. Anderson*, 14 Wis.2d 130, 109 N.W.2d 675 (1961), as was a postal worker's felony morals conviction which brought "dishonor on the business name or the institution," *O'Neal v. Employment Security Agency*, 89 Idaho 313, 404 P.2d 600, 604 (1965). *See generally* Annot., *Conduct or Activities of Employees During Off–Duty Hours as Misconduct Barring Unemployment Compensation Benefits*, 35 A.L.R.4th 691 (1985).

Clearly the mere off-duty exposure to marijuana, absent other evidence of direct impact on Grace's interests, would not be connected with Novotny's employment. Conversely, if Novotny had arrived at work unable to safely perform his duties, the presence or absence of a rule would be irrelevant in determining whether his impairment was connected with the work; it would only aid in determining whether his conduct was in deliberate disregard of his employer's interests.

Here, however, we are faced with a situation where the employee's action has no actual effect on his employment other than being in violation of the employer's rule. We cannot say that, absent its own rule, an employer has a "right to expect" a certain level of an employee's physical condition which does not actually directly affect the performance of the employee's obligations to the employer. Grace's attempt to establish otherwise by rule only speculates on any actual connection between employee's drug ingestion and his work. *Glide Lumber*, 741 P.2d at 911. *See also National Gypsum Co. v. State Employment Sec. Bd. of Review*, 244 Kan. 678, 772 P.2d 786 (1989); *Blake v. Hercules, Inc.*, 4 Va.App. 270, 356 S.E.2d 453 (1987).

The mere failure to abide by a rule, therefore, does not automatically establish the nexus for misconduct required to deny unemployment benefits. The trial court did not err in refusing to find such misconduct in Novotny's failed test. *See also Independent School Dist. No. 1 v. Logan*, 789 P.2d 636 (Okla.Ct.App.1989) (school bus drivers' positive drug test results, standing alone, do not as a matter of law constitute disqualifying misconduct).

In its second briefed proposition, Grace argues that the Board of Review's decision violates the separation of powers clause of the Oklahoma Constitution. This issue was not raised in Grace's petition in the district court, was not addressed in its only brief filed before that court, and does not appear elsewhere in the record below. Constitutional arguments raised for the first time on appeal will not be considered. *Pelican Prod. Corp. v. Mize*, 573 P.2d 703, 704 (Okla.1977).

The Board's findings of fact are supported by the evidence, and there are no errors of law appearing before us. The order of the trial court is therefore affirmed.

REIF, P.J., concurs.

BRIGHTMIRE, J., concurs in result.

BRIGHTMIRE, Judge, concurring in result.

While I agree that the judgment appealed should be affirmed I think the decision should rest on the controlling law and the facts developed at the Commission level.

First of all, emphasis should be placed on the well-established rule that the mere fact

that an employee's violation of a company rule or policy justifies termination does not ipso facto operate to disenfranchise his entitlement to unemployment compensation benefits. The pertinent language of the involved statute is this: "An individual shall be disqualified for benefits if he has been discharged for misconduct connected with his last work, if so found by the Commission." 40 O.S.1981 § 2–406. The term "misconduct" as used in § 2–406 has been judicially construed to require a showing of:

> "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Vester v. Board of Review of Oklahoma Employment Sec. Comm'n*, 697 P.2d 533, 537 (Okl.1985) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)). And as a further guide for the dispensing of unemployment benefits, *Vester* alluded to the public policy underlying the Employment Security Act, 40 O.S.1981 §§ 1–101 through 9–104, which is "to provide some form of relief to those unemployed through no fault of their own."

Secondly, the lack of evidence before the Board of Review to support a § 2–406 misconduct charge should be emphasized. Subject employee had been a good one for six-and-one-half years without a blemish on his record. Then one day he returns from a two-week leave and responds to a request for urine testing. The result was reported to be positive and the employee was fired. And, even though the employee steadfastly maintained he had taken no drugs, and even though there was no evidence of any "odd, erratic or potentially unsafe behavior" on the day he returned to work, it does not appear that the matter was discussed with the employee, or that there was any retesting, or that any other effort was made to determine whether an error might have been made.

I recognize that the employer has a right, indeed a duty, to invoke all appropriate measures to protect its employees and property from harm caused by physically or mentally impaired workers. But at the same time the rights of workers are also entitled to protection. Testing errors can occur, urine specimens can be switched, and false positive results have been known to happen. An employee should, therefore, have a right, for instance, to obtain part of a urine specimen for independent testing in case the employer reports an adverse result. Proof of a testing error may not save the employee's job but it may help protect his work record and ameliorate the damage resulting from the impact of being discharged for drug abuse.

Finally, it should be noted that the result we reach parallels that reached by the court in the factually similar case of *Independent School District No. 1 v. Logan*, 789 P.2d 636 (Okl.App.1989).