FARM FRESH DAIRY, INC., Appellant,

v.

Mike BLACKBURN; the Oklahoma Employment Security Commission; and the Board of Review of the Oklahoma Employment Security Commission, Appellees.

No. 74905.

Supreme Court of Oklahoma.

Nov. 3, 1992.

Charles S. Plumb, Jon E. Brightmire, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for appellant.

David T. Hopper, Oklahoma Employment Sec. Com'n, Oklahoma City, for appellees.

WATT, Justice.

Farm Fresh claims that the trial court and the Court of Appeals erred in upholding the Commission's award of benefits to Blackburn. We agree.

## FACTS

Blackburn worked for Farm Fresh as a delivery truck driver. In 1984, Farm Fresh set up a drug testing policy. Federal Highway Administration Department of Transportation regulations, 49 CFR parts 391 and 394, required Farm Fresh to conduct random drug testing of its drivers. Blackburn signed a consent in which he agreed to take periodic random drug tests. Blackburn acknowledged that his consent was a condition of his employment and that Farm Fresh could terminate his employment if he tested positive for drug use. Blackburn tested positive for marijuana use in April 1989, and Farm Fresh discharged him.

## PROCEDURAL HISTORY

Blackburn applied to the Commission for benefits, which the Commission granted over Farm Fresh's objections. The Commission's adjuster ruled that, under 40 O.S. 1981 § 2–406, failing a drug test was not "... misconduct connected with his last work ... [without a further showing of] ... clear objective evidence of impairment such as bizarre behavior or loss of productivity...." [1]

In affirming the award, the Commission's Board of Review said, "... a positive drug screen, absent from any evidence of impairment or strange behavior ..." did not amount to misconduct under § 2–406. Both the Commission's adjuster and its Board of Review found as a fact that Blackburn had failed the drug test.[2]

Farm Fresh brought suit in the District Court of Lincoln County for review of the Commission's order. The trial court ruled that the Commission had acted within its discretion and affirmed the Commission's award.

The Court of Appeals, Division 1, affirmed the trial court, holding that it had jurisdiction to review only errors of law. "There was no evidence of irregular or unusual conduct, or that Blackburn['s] ... performance of his duties was affected by drugs," and this was a determination of fact within the Commission's discretion, said the Court of Appeals. The Court of Appeals ruled the Commission could properly hold that failing a drug test, without more, was insufficient to prove "misconduct conducted with his last work" under § 2–406.

## ISSUE

Did the trial court and Court of Appeals err in upholding the Commission's ruling requiring Farm Fresh to show that its former employee both failed a drug test and was impaired or acted strangely, before denying unemployment benefits? We hold that the trial court and the Court of Appeals erred in so holding; the Commission improperly added the requirement of proof of impairment or strange behavior to Farm Fresh's burden of proof.

---

1. 40 O.S.1981 § 2–406 states in material part:

   "An individual shall be disqualified for benefits if he has been discharged for misconduct connected with his work, if so found by the Commission...."

   40 O.S.1981 § 1–103 declares the public policy of the state to be that unemployment benefits are "... to be used for the benefit of persons unemployed *through no fault of their own....*" [Emphasis added.]

2. Blackburn wrote to the Commission denying that he had used marijuana and claiming that

he had later obtained his own test showing no evidence of drug use. Blackburn, however, did not make the later test part of the record and presented nothing to show either the drug test Farm Fresh gave Blackburn or its drug testing procedures were inaccurate. The undisputed proof showed that the reliability of Farm Fresh's drug tests was in the ninety-ninth percentile. After it started its drug screening policy Farm Fresh experienced a dramatic reduction in employee tardiness and absenteeism. Blackburn had received several warnings concerning excessive tardiness and absences.

## DISCUSSION

■ This is a case of first impression. In its opinion the Court of Appeals relied on two earlier Court of Appeals opinions, *Grace Drilling Co. v. Novotney, et al.*, 811 P.2d 907 (Okla.App.1991), and *Ind. School Dist. No. 1 v. Logan*, 789 P.2d 636 (Okla.App.1989). The Court of Appeals concluded that whether failing the drug test was, without more, disqualifying conduct was a question of fact under *Novotney* and *Logan*. The Court of Appeals candidly observed, "We will follow these previous decisions [*Novotney* and *Logan*] unless and until the Supreme Court decides otherwise." The Commission's decision to require Farm Fresh to prove that Blackburn was impaired or acting strangely was not a factual determination. The Court of Appeals erred in holding otherwise. For the reasons discussed in this opinion we hold that the Court of Appeals erred in applying *Novotney* and *Logan* here.

Farm Fresh's drug policy was federally mandated. The goals of these federal requirements are stated in the federal regulations:

> The overall goal of the required testing is *to ensure a drug free transportation environment* which in turn will reduce accidents and casualties in motor carrier operations.

> Under this rule, a driver may not use controlled substances *on or off duty.* ... A driver cannot be hired or used if he/she has a confirmed positive drug test as a result of ... random test. [Emphasis supplied.] ·

53 Federal Register as 47135. Under 49 CFR § 391.95(c),

> A person who tests positive for the use of a controlled substance ... is medically unqualified to operate a commercial motor vehicle.

■ A strong, and wise, federal public policy exists to insure that the operators of commercial vehicles do not use drugs, either on or off duty. The clear purpose of this policy is to protect the motoring public, including Oklahoma motorists. *Neither Novotney, nor Logan addressed this vital public policy issue.* Clearly, the Commis-

sion's requirement that an employer must show both a positive drug test and impairment or odd behavior on the job weakens the policy that commercial drivers refrain from all drug use. When an employer fires a commercial driver because the driver has tested positive for drug use, the Commission may not impose additional requirements of proof on the employer before denying unemployment benefits. To do so has a chilling effect on the public policy prohibiting commercial drivers from ever using drugs.

The Court of Appeals' reliance on *Logan* here is misplaced. In *Logan*, the Court of Appeals relied on *Vester v. Bd. of Review of Okl. Emp. Sec.*, 697 P.2d 533 (Okla.1985). In *Vester* this Court discussed the meaning of the term "misconduct" as used in § 2–406, Id., footnote 1. We approved a definition taken by the Court of Appeals in *Tynes v. Uniroyal Tire Co.*, 679 P.2d 1310 (Okla.App.1984), from *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941). We held that there must be an element of deliberate behavior by the former employee before the employee may be denied benefits. There we said that the Commission erred in denying unemployment benefits to an employee whose employer fired her for excessive absences where she proved that her absences were caused by her health and were, therefore, beyond her control.

In *Logan*, the driver submitted experts who questioned the accuracy and reliability of the test. The Court of Appeals, therefore, properly held that whether Logan, a fired school bus driver, had tested positive for drug use was a question of fact. Where there are disputed facts, their resolution by the Commission's Board of Review is conclusive. 40 O.S.1981 § 2–610(1); *Vester*, Id.

*Novotney*, involved a claim for benefits by a former derrick hand worker, not a commercial driver. Thus, the important public policy requiring commercial drivers to remain drug free did not come into play there. Nevertheless, we reject the reasoning of the Court of Appeals in *Novotney*. There, the Court of Appeals accepted the

Commission Board of Review's additional requirement that the former employer show the former employee was impaired or acted in an unusual way on the job. The Board of Review had reversed the Commission adjuster's decision denying benefits to the employee. The Court of Appeals affirmed the Board of Review's holding despite the former employer's proof that it required all employees to agree to random testing for substance abuse and prohibited its employees from entering the company's premises while under the influence of drugs or alcohol. The employer defined "under the influence" as "any detectable level" of drugs or alcohol in the employee's body.

We believe *Novotney* too narrowly restricts an employer who sets up a drug testing program as a safety measure for its employees and others. We adopt instead the holding of the Court of Appeals of Arkansas in a case nearly identical to *Novotney* on its facts, which involved Novotney's employer, Grace Drilling Co.

In *Grace Drilling Co. v. Director of Labor*, 31 Ark.App. 81, 790 S.W.2d 907 (1990), the Court of Appeals of Arkansas held that Grace's former employee's failure to pass a drug test, without more, was a wilful violation of Grace's rules, and disqualified the former employee from unemployment benefits. The court relied on proof showing that Grace administered the drug test as part of a national program instituted to reduce a high accident rate among drilling crews. In so holding, the court observed,

> The [drug testing] policy expressed appellant's interest in the safety and well-being of all its employees and stated its objective as doing all possible to provide a safe work site.

█ We agree with the Arkansas court that a policy to promote on-the-job safety should be supported. Accordingly, we hold that where an employer shows that it fired a former employee for failing a drug test, which test was part of a program to promote safety in the employer's work place, the former employee is disqualified from receiving unemployment benefits. Such a result is particularly appropriate where, as here, passing such a test was an agreed condition of employment. Under such circumstances, the Commission may not require the employer to make any further showing, such as impairment or strange conduct on the job.

In *Vester*, the former employee's absences from work were caused by health problems. The former employee's "misconduct," therefore, was involuntary.

Here, in contrast to *Logan*, the Commission found as a fact that Blackburn failed the drug test. Contrary to the facts in *Vester*, Blackburn submitted no proof attacking the accuracy or reliability of the drug test he had failed. The Court of Appeals and trial court erred in affirming the Commission's order granting unemployment benefits.

Upon remand, the Commission is instructed to enter an order denying unemployment benefits to Blackburn because Blackburn's having tested positive for drugs was, under the facts of this case, "... misconduct connected with his work ..." under 40 O.S.1981 § 2–406.

CERTIORARI PREVIOUSLY GRANTED, COURT OF APPEALS OPINION VACATED, TRIAL COURT JUDGMENT REVERSED, AND MATTER REMANDED WITH INSTRUCTIONS.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and ALMA WILSON, JJ., concur.

KAUGER and SUMMERS, JJ., concur in result.