Robert BARTSCH, et al., Southwest
Veterinary Diagnostics,
Appellant,

v.

Kim MOORE, Respondent.

No. WD 52370.

Missouri Court of Appeals,
Western District.

Aug. 27, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied
Nov. 19, 1996.

James D. Boggs, Bo Roberts, Kansas City, for appellant,

Ronnae L. Coleman, Kansas City, for respondent.

Before ULRICH, C.J., P.J., and SPINDEN and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Southwest Veterinary Diagnostics ("Southwest") appeals from the final decision of the Labor and Industrial Relations Commission affirming the order of the Appeals Tribunal finding that Kim Moore ("claimant") was not disqualified from receiving unemployment benefits subsequent to her termination by Southwest. The issue presented is whether claimant was discharged for conduct sufficiently egregious to constitute misconduct to permit disqualifying her from receiving unemployment benefits.

 The scope of appellate review in unemployment compensation cases is limited to whether the Commission's decision is supported by competent, substantial evidence and authorized by law. *Campbell v. Labor & Indus. Relations Comm'n*, 907 S.W.2d 246, 249 (Mo.App.1995). The evidence is viewed in the light most favorable to the findings of the Commission and all reasonable inferences drawn therefrom which support the decision. *Garden View Care Center, Inc. v. Labor & Indus. Relations Comm'n*, 848 S.W.2d 603, 605 (Mo.App.1993).

Kim Moore was an employee of Southwest on August 17, 1995, and had been employed with Southwest for over seven years. On this date, another employee of Southwest claiming that she suspected claimant might be under the influence of a controlled substance, verbally made her supervisor aware of her suspicions. On August 18th, at the request of the supervisor, the reporting employee wrote a statement expressing her suspicions and gave the writing to Southwest. On August 21, 1995, four days after the allegedly suspicious conduct by claimant, the laboratory supervisor requested that claimant submit to a drug screening test. Claimant complied and submitted a urine specimen for analysis to the testing facility utilized by Southwest. On August 23, 1995, the test results were provided to Southwest, revealing that claimant's urine tested positive for the presence of methamphetamine.

When claimant submitted the sample for testing, she responded to questioning by the laboratory's medical review supervisor that she was not using any prescription drugs but that she had purchased an over-the-counter pep pill from a General Nutrition Center. Claimant was informed of her test results and of her termination from employment as a result of the positive screening on August 24, 1995. Claimant maintained that she had not used a controlled substance, claiming the pep pill must have caused a false positive screen, and she submitted a second urine sample for testing on August 28, 1995. The test result was negative for the presence of any controlled substance.

The initial determination of unemployment eligibility by a deputy of the Missouri Division of Employment Security was that claimant was disqualified from benefits for six weeks because she was discharged due to misconduct related to her employment because she reported to work under the influence of drugs. A hearing then took place before the Appeals Tribunal at which claimant and the lab director for Southwest appeared. After hearing testimony from both parties, the Tribunal reversed the determination of the deputy, stating that it was "not persuaded that [Southwest] has met its burden to show by competent and substantial evidence that the claimant was involved in the use of any controlled substance at any time during her employment with [Southwest]. There was no evidence produced in the hearing that the claimant engaged in any behavior that would satisfy the judicial definition of misconduct connected with her work." The Labor and Industrial Relations Commission ("Commission") adopted the decision of the Appeals Tribunal. This timely appeal followed.

Pursuant to section 288.210, RSMo 1994, this court may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds and no other:

(1) That the Commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the Commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

On appeal, no additional evidence shall be heard. § 288.210, RSMo 1994.

Southwest claims that its appeal is based on the ground that the facts found by the Commission do not support the award. Southwest argues that the decisions of the Appeals Tribunal and Commission were based on the claimant persuading them that the positive drug test was the result of an over-the-counter pep pill, despite testimony from the lab director to the Appeals Tribunal that such a pill could not cause a false positive reading. Southwest then discusses several articles from the Journal of Clinical Toxicology that were not part of the evidence before the Commission that further explain how the pep pill taken by claimant could not have caused a false positive test result for the presence of methamphetamine, asking this court to take judicial notice of the articles.

■ The issue presented is whether claimant was discharged for conduct sufficiently egregious to constitute "misconduct" as it is statutorily considered, thereby disqualifying claimant from receiving unemployment benefits. The Employment Security Law does not define "misconduct," but Missouri courts have adopted the definition set forth in 76 AM.JUR.2D *Unemployment Compensation* § 52 (1976):

[M]isconduct ... must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Massey v. Labor & Indus. Relations Comm'n*, 740 S.W.2d 680, 682 (Mo.App.1987).

While the violation of a work rule may justify the discharge of an employee, such a violation does not necessarily amount to misconduct for unemployment compensation purposes. 76 AM.JUR.2D *Unemployment Compensation* § 53 (1976).

█ The evidence before the Commission consisted of testimony from the lab supervisor and testimony from the claimant. The lab supervisor stated that the claimant was tested after she was observed by a co-worker coming in late to work, taking an extended lunch hour, laying her head down on her desk and having to be awakened to start her shift, and not being able to operate the computer system correctly. The drug test did not occur on the date of the alleged behavior because the observations were not then made in writing per company policy. The lab supervisor did not personally observe claimant's conduct, and the co-worker, who observed what she believed was claimant's suspicious conduct, did not testify at the hearing.

Claimant testified that she was late to work on the day in question because she was enrolling her son in school, and she had pre-approved permission to be late. She testified that she entered a single requisition under the wrong requisition number through the computer system. A letter from a co-worker was entered into evidence stating that had claimant been under the influence of drugs as asserted, claimant would not have been able to perform her job as she did on the day in question. Claimant stated that the complaining co-worker said nothing to her personally about her alleged behavior. She said that she and the complaining co-worker were not then speaking to each other because of the co-worker's demotion from lab supervisor. Finally, claimant stated that just prior to her discharge she had received a good review from the lab supervisor and a substantial raise in pay.

█ Generally, the claimant has the burden to prove she is entitled to benefits. *Francis Howell School Dist. v. Labor & Indus. Relations Comm'n*, 687 S.W.2d 681, 684 (Mo.App.1985). Where an employer claims that an employee was discharged for misconduct, however, the employer has the burden of proving misconduct by competent and substantial evidence. *Business Centers of Missouri, Inc. v. Labor & Industrial Relations Comm'n*, 743 S.W.2d 588, 589 (Mo.App.1988). The Commission's interpretation of whether behavior and actions amount to misconduct under the Employment Security Law is entitled to great weight. *Garden View Care Center, Inc. v. Labor & Indus. Relations Comm'n*, 848 S.W.2d 603, 606 (Mo.App.1993). The Commission determined competent and substantial evidence was not produced by Southwest to show misconduct by claimant. While the evidence was sufficient to support a finding that claimant tested positive for methamphetamine and that claimant's evidence of a false positive was countered by the lab supervisor's testimony, the Commission's determination that Southwest did not show "misconduct" sufficient to satisfy the requirements of the Employment Security Law cannot be declared erroneous. Claimant was not tested until four days after the allegedly questionable behavior took place, and no evidence to link the conduct in question to her being under the influence of an illegal substance on the day in question was presented. Credible testimony in the record that claimant's conduct of being late to work was justified and that she performed her job satisfactorily was presented. Southwest did not carry its burden of proving "misconduct" related to claimant's work under the Employment Security Law. The Order of the Labor and Industrial Relations Commission is affirmed.

All concur.