BALDOR ELECTRIC COMPANY,
Appellant,

v.

Raylene REASONER and Missouri
Division of Employment Security,
Respondents.

No. ED 79597.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 11, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 24, 2002.

Application for Transfer Denied
Feb. 26, 2002.

Timothy J. Sarsfield, Timm W. Schowalter, Thompson Coburn LLP, St. Louis, MO, for appellant.

Raylene Reasoner, St. Louis, pro se.

RICHARD B. TEITELMAN, Judge.

Baldor Electric Company ("Employer") appeals from a decision of the Labor and Industrial Relations Commission (the "Commission") finding that Raylene Reasoner ("Claimant") was not disqualified from receiving unemployment compensation benefits following her discharge for violating Employer's Substance Abuse Policy (the "Policy").

Employer raises two points on appeal. First, Employer argues that the Commission erred in finding that Employer's laboratory report reflecting the results of Claimant's drug test was inadmissible hearsay and did not constitute competent evidence. Second, Employer argues that the Commission erred in finding that Claimant was eligible for unemployment compensation because her violation of the Policy constituted misconduct connected with work, thus disqualifying her from receiving benefits pursuant to Section 288.050.2 RSMo (2000).[1] We affirm the Commission's Order.

### Factual and Procedural Background

On November 1, 1999, Employer enacted a revised version of the Policy which provided, *inter alia*, that an employee must undergo drug testing where employ-

---

1. All subsequent statutory citations are to RSMo (2000) unless otherwise specified.

er has "reasonable suspicion" to believe an employee is impaired on the job by drugs or alcohol. According to the Policy, reasonable suspicion "shall" exist when an employee suffers a work-related injury resulting in medical treatment. The Policy further provides that a positive test result shall be grounds for discipline, up to and including termination, even for the first offense.

On August 18, 2000, Claimant arrived for work and took her position on the assembly line. While performing her duties, a spool of plastic mesh fell and cut Claimant's finger. The spool was dirty and Claimant was required to get a tetanus shot. Employer considered this incident to be a work-related injury resulting in medical treatment and, pursuant to the Policy, required Claimant to undergo a urine test designed to detect the presence of drugs and alcohol. Claimant's urine test indicated a level of 25 nanograms of marijuana metabolites per milliliter (ng/ml). Under the Policy, any level of marijuana metabolites exceeding 15 ng/ml is deemed a positive result. According to Employer, the 15 ng/ml level reflects "user cut off levels and not passive levels." On August 21, 2000, after 17 years of service to Employer with no prior reprimands for drug or alcohol use, Claimant was discharged from her employment solely on the basis of the positive drug test.

Claimant then filed a claim for unemployment benefits with the Division of Employment Security. Employer protested the claim, arguing that Claimant was disqualified from receiving unemployment benefits due to her positive drug test. A deputy agreed and Claimant was denied benefits.

Claimant appealed the deputy's decision to the Appeals Tribunal. An Appeals Referee ("Referee") held a hearing and heard testimony from Employer's production manager as well as Claimant. At the hearing, Employer's production manager testified as to the foundation for admitting Claimant's drug test results into evidence. He also introduced a copy of Employer's Policy. The Referee admitted both items into evidence without objection from Claimant. Employer offered no other evidence that Claimant used drugs or was intoxicated while at work and relied solely upon the drug test to support its position.

In response to Employer's evidence, Claimant testified that she was exposed to second-hand marijuana smoke on the weekends during social gatherings with friends and acquaintances. She consistently denied having smoked marijuana and stated that her only exposure was through second-hand smoke. Claimant also testified that after her discharge by Employer, she passed a drug test as part of the interview process with a prospective Employer.

After hearing the evidence, the Referee overturned the deputy's decision. The Referee found that there was no evidence that Claimant's discharge was for misconduct connected with work as is required to disqualify Claimant from receiving benefits under Section 288.050.2. He specifically found that Claimant did not smoke marijuana and that Claimant presented credible firsthand evidence that her only exposure to marijuana was through second-hand smoke. The Referee further found that Employer provided no evidence to interpret the "meaning of the [test] results." Although the test results were admitted into evidence, the Referee ultimately determined that they were hearsay and did not constitute competent evidence. The Commission adopted and affirmed the Referee's decision. This appeal followed.

## Discussion

 Our standard of review is governed by Section 288.210, which states that

"[T]he findings of the Commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." The decision of the Commission will be disturbed only if it is unsupported by competent and substantial evidence or is unauthorized by law. *Division of Employment Security v. Gardner–Denver Machinery, Inc.*, 941 S.W.2d 13, 14 (Mo.App. W.D.1997). We view the evidence in the light most favorable to the findings of the Commission. *Tutwiler v. Fin–Clair Corp.*, 995 S.W.2d 497, 499 (Mo. App. E.D.1999).

### Point I

■ In its first point on appeal, Employer contends that the Commission erred in adopting the Referee's finding that the test results were inadmissible hearsay and did not constitute competent evidence. This point misapprehends the finding adopted by the Commission. The Referee admitted the test results into evidence without objection from Claimant and after Employer's production manager established the requisite foundation. After reviewing the test results, the Referee determined that the "Employer witness had no technical knowledge of the test, the equipment, or the meaning of the results." Therefore, read in context, the Referee's statement that the test results were "hearsay and do not constitute competent evidence" reflects the Referee's assessment of the evidentiary value of the test results, not their admissibility. Neither the Referee nor the Commission found that the test results were inadmissible. Instead, the Commission simply adopted the Referee's finding that Employer provided no evidence to interpret the meaning of the test results. Once admitted, the weight to be given evidence rests with the Commission. *Reeves v. Midwestern Mortg. Co.*, 929 S.W.2d 293, 295 (Mo.App. E.D.1996). We may not substitute our judgment for that of the Commission on a matter of the credibility of evidence. *Schneider v. Ashburn/Schneider Painting* 849 S.W.2d 271, 274 (Mo.App. E.D.1993). Point denied.

### Point II

■ Employer next contends that because the evidence showed that Claimant tested positive for marijuana in violation of the Policy, it is indisputable that she committed misconduct connected with work disqualifying her from receiving unemployment compensation. Under the facts of this case as determined by the Commission, the issue thus presented is whether the violation of Employer's substance abuse Policy through off-duty exposure to second-hand marijuana smoke necessarily constitutes misconduct connected with work. In resolving this issue, we note that Employer, not Claimant, bears the burden of proving by substantial and competent evidence that Claimant was discharged for misconduct connected with work. *Tutwiler v. Fin–Clair Corp.*, 995 S.W.2d 497, 499 (Mo.App. E.D.1999). We hold that Employer has not met its burden and Claimant is therefore not disqualified from receiving unemployment compensation benefits.

■ As a provision that disqualifies a discharged employee from receiving unemployment compensation, the misconduct connected with work clause in Section 288.050.2 must be strictly construed against the disallowance of benefits. *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 122 (Mo.App. W.D.1999). The plain language of the statute provides that misconduct will disqualify a claimant from receiving unemployment compensation only if the misconduct is "connected with the claimant's work." In interpreting this

language, Missouri courts recognize that while an employee's violation of a work rule may warrant discharge of that employee, it does not necessarily constitute misconduct connected with work justifying the denial of unemployment compensation benefits. *Bartsch v. Moore,* 931 S.W.2d 877, 880 (Mo.App. W.D.1996). Therefore, violation of a work rule is not dispositive proof of misconduct connected with work. Instead, a reasonable work rule serves as a relevant factor in determining if the behavior at issue is in fact misconduct and if such misconduct is connected with work.

Employer seeks to overcome the foregoing analysis by arguing that Missouri courts "routinely" find that the violation of a reasonable work rule constitutes misconduct connected with work. However, the cases cited by Employer do not support the argument that Claimant's violation of the Policy alone is sufficient to support a finding of misconduct connected with work. For instance, in *Hurlbut v. Labor & Indus. Relations Comm'n,* 761 S.W.2d 282 (Mo.App. S.D.1988), an employee was denied unemployment benefits for violating the employer's rule regarding the verification of funds prior to completing a job shift. Rather than purporting to regulate off-duty conduct, this work rule established one of the employee's direct, on-the-job responsibilities. The work rule violation in *Hurlbut* was thus connected with the employee's work.

Similarly, in *Koret of California, Inc. v. Zimmerman,* 941 S.W.2d 886 (Mo.App. S.D.1997), an employee disregarded accounting rules and failed to secure the manager's office per company policy. The employee was discharged and then disqualified from receiving unemployment compensation. As in *Hurlbut,* the work rules at issue served to further define the employee's on-the-job responsibilities. Therefore, neither case established a general rule that all violations of reasonable work rules are also instances of misconduct connected with work. Instead, each of these cases involved the violation of a work rule that served in part to define the employee's on-the-job responsibilities and was therefore indisputably connected with work. Accordingly, these cases do not support Employer's argument that Claimant's violation of the Policy as a result of off-duty conduct necessarily disqualifies her from receiving unemployment compensation.

Strictly construing Section 288.050.2 against the disallowance of benefits, we conclude that in this case, the relevant inquiry is whether Claimant's off-duty conduct affected her ability to fulfill her on-the-job responsibilities to Employer. Accordingly, to meet its burden of proving misconduct connected with work, Employer had to produce evidence that, in addition to violation of the Policy, Claimant's off-duty exposure to marijuana had some demonstrable impact on her ability to fulfill her on-the-job responsibilities. Employer cannot supplant the statutory requirement of proving misconduct connected with work and reduce its statutory unemployment insurance responsibilities through the promulgation of its own work rules, especially when such rules purport to regulate the off-duty conduct of its employees.

Other states have dealt with this issue and have also required evidence of impairment of work performance or evidence that the tested levels of drugs would affect the employee's on-the-job performance. *See Weller v. Arizona Dept. of Economic Security,* 176 Ariz. 220, 860 P.2d 487, 493 (1993); *Virginia Employment Comm'n v. Sutphin,* 8 Va.App. 325, 380 S.E.2d 667 (1989); *National Gypsum Co. v. State Employment Security Bd. Of Rev.,* 244 Kan. 678, 772 P.2d 786, 792 (1989); *Glide Lum-*

*ber Products Co. v. Employment Division,* 86 Or.App. 669, 741 P.2d 907, 910–911 (1987). Each case held that off-duty drug use in violation of an employer's substance abuse policy constitutes work-related misconduct warranting the denial of unemployment compensation only if the employee's work performance was in some way adversely affected. We agree with these holdings.[2]

■ Under the foregoing principles, we find that Employer has in this case failed to meet its burden of proving misconduct connected with work. There was no substantial evidence that Claimant ever used marijuana while at work or was in any way impaired by marijuana while at work. The only evidence of misconduct connected with Claimant's work was her test result indicating a level of 25ng/nl of marijuana metabolites in her urine. Employer offered no expert testimony or any other explanation demonstrating that the 25ng/ml level in any way impaired Claimant's ability to meet her on-the-job responsibilities to Employer.[3] Instead, the only testimony regarding the meaning of the test results was Employer's production manager's statement that the 15 ng/ml is a cutoff that "I believe is their technical measurement and anything above 15 deems it greater than passive." Employer therefore introduced no evidence to establish that its 15ng/ml cutoff amounted to anything more than Employer's arbitrarily established figure or that Claimant's test results evidenced any on-the-job impairment.

■ The Commission reviewed the evidence produced by Employer and found that Employer failed to sustain its burden of proving misconduct connected with work. The Commission's interpretation of whether behavior constitutes misconduct is entitled to great weight. *Bartsch v. Moore,* 931 S.W.2d 877, 880 (Mo.App. W.D. 1996). Because Employer has produced no evidence that Claimant's test results indicate that she had used drugs or was in any way impaired by drugs while at work, we find no basis for reversing the Commission's finding that there was no evidence of misconduct connected with Claimant's work.

We conclude by emphasizing what this opinion does not do. This opinion does not condone or encourage the use of illegal drugs in the workplace or elsewhere. It

**2.** The dissent correctly notes that the states are split on this issue. Some states have held that a positive drug test in violation of an employer's substance abuse policy alone constitutes misconduct connected with work, thus disqualifying the employee from receiving unemployment compensation benefits. We are not persuaded by the rationale of these holdings.

**3.** This case is thus distinguished from *George's Processing, Inc. v. Henry Ottendorf and Division of Employment Security,* SD # 24162, an opinion handed down by the Southern District on October 30, 2001. In that case, the claimant sustained a work-related injury, and pursuant to the Employer's substance abuse Policy, was required to undergo a drug test. Claimant tested positive for marijuana. As in the instant case, the Employer's Policy deemed any result above 15 ng/ml to be a positive result. Claimant tested positive with a level of 342 ng/ml. The Commission found no objective evidence of impairment at the time of the test and therefore affirmed the deputy's finding that the claimant was fired for a positive drug test, not because of misconduct connected with work. The Southern District reversed, holding that there was ample evidence that the claimant was in fact impaired by marijuana while at work. The court noted that a chemist testifying on behalf of Employer stated that the 342 ng/ml level reflected on claimant's drug test indicated possible impairment. Furthermore, the claimant testified that he believed he would not pass the test because he had smoked marijuana earlier that morning or the day before.

does not trivialize the social and economic consequences of drug abuse. It neither prohibits employers from discharging employees who use illegal drugs nor requires that unemployment compensation be afforded to those whose drug use impairs their work performance or endangers fellow workers. To the contrary, our holding does nothing more than protect an employee's right to receive unemployment compensation when the reason for the employee's discharge is not demonstrably work-related pursuant to Section 288.050.2.

The Order of the Commission is affirmed.

GARY M. GAERTNER, SR., J. concurs.

CLIFFORD H. AHRENS, J. dissents in separate opinion.

CLIFFORD H. AHRENS, Judge, dissenting.

I respectfully dissent. The uncontradicted evidence in this case shows that Claimant violated Employer's substance abuse policy. The toxicology report, certified by a medical review officer, who was a medical doctor, confirmed that Claimant tested positive for marijuana metabolite. Under Employer's substance abuse policy, which was published to its employees, a confirmed, positive test result "shall be grounds for discipline, up to and including termination, even for the first offense."

Although respondents have not favored this court with briefs, it is clear from the record that Claimant has not challenged the reasonableness of Employer's substance abuse policy. Employer's policy sets out reasonable and clearly articulated standards of behavior. The policy also makes it clear to employees that violation of such standards constitutes grounds for termination of employment. In my opinion, violation of such standards also constitutes "misconduct connected with the claimant's work" under section 288.050 RSMo 2000.[1]

Section 288.050 does not define "misconduct connected with the claimant's work." Missouri Courts have defined such misconduct as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*City of Kansas City v. Arthur,* 998 S.W.2d 870, 873 (Mo.App.1999) (citation omitted). Under that definition, violation of a reasonable work rule can constitute misconduct. *Hurlbut v. Labor and Industrial Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App.1988) (finding a violation of employer's accounting procedures requiring verification of cash on hand at beginning of shift); *Koret of California, Inc. v. Zimmerman,* 941 S.W.2d 886 (Mo.App.1997) (finding a violation of employer's policies and procedures for accounting and cash management, store security, pricing and product display).

The majority attempts to distinguish these cases because they dealt with an employee's on-the-job responsibilities rather than "off-duty conduct with no demonstrable impact on or connection with the Claimant's on-the-job responsibilities." (Maj. Op. at p. 134). The majority opinion ignores the plain language of Employer's substance abuse policy in the present case, which specifically provides that the objective is "to ensure a safe, healthy, and

---

1. All subsequent statutory citations are to RSMo 2000 unless otherwise specified.

productive work place for Baldor employees." The policy makes it clear that it "is not intended to monitor off-duty conduct of employees or to regulate their private lives. The Company respects the privacy of its people. Baldor must, however, have a skilled, conscientious and alert work force." It is apparent that Employer's substance abuse policy was an "on-the-job responsibility" as much as other duties in an employee's job description.

Since there is no challenge in this case to the reasonableness of Employer's substance abuse policy, it is undisputed that Employer has a written policy known to Claimant which sets definitive standards of conduct which it deems necessary to "ensure a safe, healthy, and productive work place." Violation of these standards constitutes a "disregard of standards of behavior which the employer has the right to expect" of its employee, and is therefore "misconduct connected with the claimant's work" within the meaning of section 288.050.

The majority opinion recognizes that Claimant violated Employer's substance abuse policy. But the majority finds that "a reasonable work rule" serves only as a "relevant factor" in determining whether the behavior constitutes misconduct connected with work. The majority imposes an additional requirement in order for Employer to meet its burden of proving misconduct connected with the Claimant's work under section 288.050, by requiring that Employer produce evidence that, in addition to violation of the policy, Claimant's off-duty exposure to marijuana had some demonstrable impact on her ability to fulfill her on-the-job responsibilities. I disagree. The violation of an employer's reasonable substance abuse policy meets the well-established definition Missouri courts have adopted, in that it constitutes "disregard of standards of behavior which the employer has the right to expect" of its

employee, and is thus "misconduct connected with the claimant's work."

The majority opinion cites several cases from other jurisdictions requiring evidence of impairment of work performance (Maj. Opin. at p. 134–35). Other jurisdictions with similar statutory language as Missouri impose no such requirement and hold that violation of a reasonable substance abuse policy constitutes "misconduct connected with work."

In a case factually similar to this one, involving an employee who was exposed to second-hand smoke in a place where other people were smoking marijuana, an appellate court in Louisiana held that:

> Plaintiff's admission that he voluntarily exposed himself to an environment in which illegal drugs were being smoked is sufficient to describe his conduct as a willful or wanton disregard for the employer's interest or a direct disregard of standards of behavior which the employer has the right to expect from his employees. . . .

*Eugene v. Administrator, Div. of Employment Security*, 525 So.2d 1185, 1187 (La. Ct.App.1988).

A positive drug test in violation of a company policy prohibiting any detectable level of drugs in the body has been found to constitute misconduct which disqualifies an employee from unemployment benefits because it represents a deliberate violation of employer's rules and willful and wanton disregard of the standard of behavior which employer had a right to expect of an employee. *Grace Drilling Company v. Director of Labor, et al*, 31 Ark.App. 81, 790 S.W.2d 907, 909 (1990).

The Oklahoma Supreme Court adopted the holding of the Arkansas appellate court in *Grace, supra*, recognizing that "a policy to promote on-the-job safety should be supported," and held that "where an employer shows that it fired a former employee for failing a drug test, which test

was part of a program to promote safety in the employer's work place, the former employee is disqualified from receiving unemployment benefits." *Farm Fresh Dairy, Inc. v. Blackburn, et al.,* 841 P.2d 1150, 1153 (Okl.1992).[2] The Oklahoma court further held that "Under such circumstances, the Commission may not require the employer to make any further showing, such as impairment or strange conduct on the job." *Id.*

A Claimant's admission that he had again smoked marijuana, in violation of an agreement with employer to remain drug-free, following his return to work after a prior drug rehabilitation, was held to constitute "willful misconduct" under Pennsylvania law. *Szostek v. Unemployment Compensation Board of Review,* 116 Pa. Cmwlth. 7, 541 A.2d 48 (1988). The Pennsylvania court held that, although the term "willful misconduct" was not defined by statute, Claimant's conduct met the judicial definition of such misconduct, because "it represents a deliberate violation of an employer rule as well as a disregard of standards of behavior which Employer had a right to expect of his employee...." *Id.* at 50. The Court rejected the claimant's argument that his use of marijuana was off-the-job and that no evidence was presented that Claimant's marijuana use affected his job performance, and held that where the employer discharged Claimant

for violation of a specific condition of employment, "findings of fact pertaining to the nature of claimant's drug use and its direct effect upon job performance are not required." *Id.* at 51.

Off-the-job conduct which resulted in a positive drug test in violation of an employer's rule or policy was held by the Nevada Supreme Court to constitute "misconduct connected with his work" under Nevada law, where the employer's rule or policy "has a reasonable relationship to the work to be performed" and where there has been an "intentional violation or willful disregard of that rule or policy." *Clevenger v. Nevada Employment Security Department,* 105 Nev. 145, 770 P.2d 866, 868 (1989).

Use of cocaine prior to reporting for work, in violation of a company policy, was held to constitute a deliberate violation of employer's policy and indicated a disregard of the standards of behavior which the employer had a right to expect. *Overstreet v. Illinois Department of Employment Security,* 168 Ill.App.3d 24, 118 Ill. Dec. 730, 522 N.E.2d 185 (1988).[3]

In this case, the majority concludes, "[t]he only evidence of misconduct connected with Claimant's work was her test result indicating a level of 25 mg/nl of marijuana metabolites in her urine." (Maj. Op. at p. 135). Since this violated employer's

---

**2.** Although *Farm Fresh Dairy, Inc.* involved a commercial truck driver subject to an employer's federally mandated drug policy, the Oklahoma Supreme Court specifically rejected the reasoning of the Oklahoma Court of Appeals in a case involving a derrick hand worker. *Grace Drilling Co. v. Novotny,* 811 P.2d 907 (Okla.App.1991). The Oklahoma Supreme Court stated in *Farm Fresh Dairy* that although the "important public policy requiring commercial drivers to remain drug free did not come into play" in *Novotny,* it nevertheless found that *Novotny* "too narrowly restricts an employer who sets up a drug testing program as a safety measure for its employees and others." *Farm Fresh Dairy,*

841 P.2d at 1152, 1153. Thus, the holding in *Farm Fresh Dairy* was not limited to employers with federally mandated drug policies.

**3.** Illinois later, by statute, defined "misconduct" as "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602 (formerly cited as Ill.Rev.Stat. Ch. 48, para. 432 (1991)). *See Robinson v. Department of Employment Security,* 264 Ill.

substance abuse policy, the violation alone is sufficient to invoke the waiting period for unemployment benefits under section 288.050. But the majority opinion additionally requires expert testimony or other explanations demonstrating that Claimant's level of drugs impaired her on-the-job responsibilities. Such evidence should not be required where there is no challenge to the reasonableness of Employer's substance abuse policy. Such expert testimony might be relevant or necessary in a case where there was a dispute as to whether Employer's policy had a reasonable relationship to the work to be performed. That issue is not involved in this case, and no such expert testimony was necessary.

To judicially engraft an additional requirement of proof of on-the-job impairment onto Employer's burden of proof will destroy the benefits of a "bright-line", clearly articulated, and published substance abuse policy. In addition, it will promote decisions and litigation on unemployment benefits based upon a vague and uncertain standard of whether that employee was impaired in performing "on-the-job responsibilities." Compliance with a reasonable substance abuse policy should be an "on-the-job responsibility" of every worker.

Claimant admitted that she voluntarily exposed herself to second-hand marijuana smoke on the weekends during social gatherings with her friends and acquaintances. She had a positive drug test in violation of a specific standard of behavior contained in employer's substance abuse policy. This evidence established that Claimant disregarded standards of behavior, which Employer had the right to expect of Claimant. As a result, Claimant was disqualified from receiving unemployment compensation benefits under section 288.050.2 because claimant was "discharged for misconduct connected with the claimant's work."

I would reverse the decision of the Commission[4], and remand with instructions to enter a decision that Claimant was disqualified from receiving unemployment compensation benefits under section 288.050.2.

---

App.3d 659, 202 Ill.Dec. 92, 637 N.E.2d 631, 633 (1994).

4. The Commission, by a vote of 2 to 1, adopted the decision of the Appeals Tribunal, which had reversed a deputy's determination. The Commission found that Claimant was not disqualified for benefits by reason of her discharge from work. Commission member Wrigley dissented, stating in part, "[w]hatever Claimant's explanation may be, she tested positive for drugs in violation of the employer's rules. The employer has a right to expect its employees to work without illegal or illicit drugs in their systems. Claimant has disregarded the employer's interest in having these standards of behavior."