2008 OK CIV APP 38

Annamma K. KAKKANATT, Plaintiff/Appellant,

v.

OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Board of Review of the Oklahoma Employment Security Commission and the Oklahoma Department of Mental Health and Substance Abuse Services, Defendants/Appellees.

No. 103,305.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 8, 2008.

Certiorari Denied March 31, 2008.

Annamma K. Kakkanatt, Oklahoma City, OK, Pro Se.

Teresa Thomas Keller, Oklahoma City, OK, Attorney for Oklahoma Employment Security Commission, Defendant/Appellee.

LARRY JOPLIN, Judge.

¶ 1 Appellant Annamma K. Kakkanatt (Kakkanatt) seeks reversal of the trial court's order affirming an order of Appellee Oklahoma Employment Commission Board of Review by which the Board of Review denied Appellant's unemployment compensation claim on a determination that she was discharged due to misconduct related to her work. We hold the trial court and administrative agency erred as a matter of law in subjecting Appellant to a higher standard of care in evaluating misconduct based upon her occupation as a nurse.

## BACKGROUND

¶ 2 The facts relevant to this appeal are not in dispute. Appellant worked for the Oklahoma Department of Mental Health and Substance Abuse Services (Employer) as a registered nurse from 2000 to 2004. At the time of her termination, Appellant worked at the Oklahoma County Crisis Center and was the only registered nurse on her unit assigned to the night shift.

¶ 3 On October 31, 2004, Kakkanatt checked the blood sugar levels of four (4) diabetic patients and, based upon the results, prepared insulin injections. During the process, Kakkanatt called for a specific patient to step forward and receive care. Another patient, with a name different than that called, appeared and presented herself for an injection of insulin. Appellant failed to check the patient's wristband or otherwise confirm her identify, an act which resulted in Appellant's providing medical care to the wrong patient.

¶ 4 Appellant soon discovered her mistake, provided the intended patient with an insulin injection and monitored the patient who received the medication in error. Neither patient required additional treatment as a result of Kakkanatt's mistake.

¶ 5 Kakkanatt completed a medication error report the same day and left the document for consideration by the Director of Nursing. The Director of Nursing contacted Appellant and advised her that she would be subjected to discipline as a result of the medication error. Soon after, Employer sought Appellant's termination, citing Appellant's failure to confirm the identity of the patient in advance of providing care. The Employer offered to allow Appellant to resign in lieu of termination and Kakkanatt submitted her resignation.

¶ 6 Appellant filed a claim for unemployment compensation. Employer opposed the claim and presented information that Appellant's mistake constituted willful misconduct under 40 O.S. § 2–406 sufficient to deny unemployment benefits. The Oklahoma Employment Security Commission (Commission) agreed with Employer and denied the Appellant's claim.

¶ 7 Kakkanatt appealed to the OESC Appeal Tribunal (Tribunal). A hearing was conducted before a referee wherein only Kakkanatt appeared. Following the hearing, the Tribunal issued an order denying the claim. The order contained requisite find-

ings and fact and conclusions of law which stated, in part:

. . .

The Claimant did not verify the patient's identity before administering the medication. She reported the incident when she discovered what she had done and documented her error. . . .

A health professional is held to a higher standard inasmuch as patients rely on their expertise for medical treatment. The fact that the Claimant reported the error does not minimize the avoidable error nor the potential health risk imposed on the patient due to [the Claimant's] carelessness. By her own admission, the Claimant failed to confirm the patient's identity prior to giving . . . an insulin injection which amounts to gross negligence. Therefore, the Claimant was discharged for willful misconduct.

¶ 8 Appellant sought relief from the OESC Board of Review (Board of Review) which affirmed the Tribunal's findings in its entirety. Kakkanatt then sought judicial relief from the district court. Following review of the record and submitted briefs, the trial court affirmed the decision reached by the Board of Review. This appeal ensued.

¶ 9 In her appeal, Kakkanatt claims that the trial court erred in upholding the Tribunal and Board of Review's determination that her mistake constituted § 2–406 misconduct. The Commission seeks affirmance, claiming the lower court and Board of Review applied the correct legal standard in denying the benefit claim based upon the facts presented. The essential question presented is whether the administrative agency and trial court acted properly in applying a heightened level of scrutiny based solely upon Appellant's status as a nurse and health professional.

## STANDARD OF REVIEW

 ¶ 10 In reviewing decisions entered by the Oklahoma Employment Security Commission Board of Review, the trial court's plenary authority is limited to errors of law, with factual findings reached by the Board of Review to be affirmed if supported by competent evidence. *Gilchrist v. Board*

*of Review of the Oklahoma Security Commission*, 2004 OK 47, ¶ 6, 94 P.3d 72, 74; 40 O.S. § 2–610(1). The standard is the same on appellate review. *Id.* The question of whether activity constitutes "misconduct" sufficient to deprive an employee of entitlement to unemployment benefits is a question of law and subject to plenary review. *Id.*

## ANALYSIS

 ¶ 11 Title 40 O.S. § 2–406 of The Oklahoma Employment Security Act (Act) states that an individual shall be disqualified from receiving unemployment benefits if the employee was discharged for "misconduct connected with his last work." The statute does not define misconduct, however, the Oklahoma Supreme Court has held that in unemployment compensation matters the term means:

. . . conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Vester v. Board of Review of Oklahoma Employment Security Commission*, 1985 OK 21, ¶ 12, 697 P.2d 533, 537, citing *Boynton Cab Company v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

¶ 12 Subsequent to *Vester's* establishment of a working definition of misconduct, the Oklahoma Supreme Court has held that under this standard an element of *deliberate* behavior must exist to establish misconduct sufficient to deny unemployment compensation. *Farm Fresh Dairy, Inc. v. Blackburn*, 1992 OK 148, ¶ 11, 841 P.2d 1150, 1152. There, the Court held a truck driver's failure to pass mandatory drug screen tantamount to misconduct subjecting worker to denial of unemployment benefits. Further, in *Gilchrist v. Board of Review of the Oklahoma Employment Security Commission*, 2004 OK 47, ¶ 9, 94 P.3d 72, 73, the Court held the

giving of false and misleading testimony by a forensic chemist in a criminal case to be disqualifying misconduct based upon employee's "intentional and substantial disregard of the employer's interests ... [and] of the employee's duties and obligations to [her] employer." *Gilchrist* at ¶ 14, 94 P.3d at 76, citing *Vester*, 1985 OK 21 at ¶ 15, 697 P.2d at 538.

¶ 13 Conversely, the appellate courts of Oklahoma have exempted from the misconduct standard "... mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or *ordinary negligence in isolated instances*, or good faith errors in judgment or discretion...." (Emphasis Added.) *Vester* at ¶ 12, 697 P.2d at 537. See *Arkle v. Independent School District Number One of Tulsa County*, 1989 OK CIV APP 78, ¶ 14, 784 P.2d 91, 93 (school bus driver's failure to provide employer with results of physical and drug screening test, in the absence of willfulness or evil design, insufficient to support denial of unemployment compensation on basis of misconduct); *Vogle v. Oklahoma Employment Security Commission*, 1991 OK CIV APP 84, ¶ 14, 817 P.2d 268, 270–271 (employee's isolated and unintentional mistake in removing merchandise from employer's place of business without permission, while sufficient to divest employee of employment, was not misconduct sufficient to deny unemployment benefits).

■■■ ¶ 14 From these cases, the misconduct standard contemplates *both* the nature of the act undertaken by the employee and the employee's state of mind at the time the event(s) occurred. As has been succinctly stated by the Washington Court of Appeals under a misconduct standard similar to our own: "(I)ntentional misconduct *is* disqualifying; a single instance of ordinary work-related negligence *is not* disqualifying; and repeated instances of ordinary work-related negligence *may be* disqualifying." (Emphasis in Original.) *Johnson v. Employment Security Department*, 64 Wash.App., 311 824 P.2d 505, 507 (1992), citing *Macey v. Department of Employment Security*, 110 Wash.2d 308, 752 P.2d 372, 377–378 (1988).

¶ 15 As the record before us reflects no other mistakes by Appellant, the question becomes whether this single instance is in the nature of ordinary work-related negligence, and thus allowing unemployment compensation, or gross negligence, or intentional misconduct, and thus disqualifying her from receiving benefits. OESC takes the position that because of the nature of Appellant's employment, and the potential for catastrophic consequences of even ordinary work-related negligence, Appellant should be subjected to a higher standard of conduct.

¶ 16 The Oklahoma Supreme Court has not previously addressed the issue of the creation of a more stringent standard of care applicable to a particular occupational title or class of employees when evaluating misconduct under the Employment Security Act. Therefore, we turn to opinions of other states.

¶ 17 The Supreme Court of Pennsylvania rejected a lower court's adoption of a higher standard of conduct in denying unemployment compensation to a nurse discharged for misconduct after failing to properly dilute an antibiotic when administering the drug to a patient under her care. *Navickas v. Unemployment Compensation Board of Review*, 567 Pa. 298, 787 A.2d 284 (2001). That standard provided that: "As to health workers ... because of the duty owed by hospitals to their patients, hospital employers may hold employees whose functions are related to that duty to a high standard of behavior, so that inadvertent mistakes may amount to willful misconduct." *Id.* at 289. The Supreme Court, however, held:

> Mere "negligence" does not rise to the level of "willful misconduct" without the additional element of an intentional disregard of the employer's interests.

*Id.* at 290. (Citation omitted.)

¶ 18 Subsequently, the Pennsylvania Supreme Court held that rather than develop individual separate standards for employees based upon the perceived importance of their job duties, courts were instead obligated to apply *only* the legislatively-mandated misconduct standard. *Grieb v. Unemployment Compensation Board*, 573 Pa. 594, 827 A.2d 422, 427(2003).

¶ 19 An analysis of our own case law and statutes leads us to the same result. Section 2–406 provides the statutory basis permitting the denial of unemployment compensation. The only standard used for denial is "misconduct", which the courts have defined as acts that are deliberate, intentional or negligence of such a degree as to manifest intent.[1] Additionally, the Employment Security Act does not provide for a more stringent standard to be applied to health care professionals or any other identifiable class of employees.

¶ 20 There is no question that Kakkanatt made a mistake in administering medication to a patient under her care and that her actions justified termination. However, there is no evidence that her action was anything more than ordinary negligence. There was no evidence that she did anything willfully. Kakkanatt's ordinary negligence was not transformed into gross negligence solely on the basis of her type of employment. Otherwise, any act of negligence or inadvertence on the part of any health care worker, standing alone, could be deemed misconduct.

¶ 21 The trial court's order is hereby reversed and the matter is remanded for entry of an order awarding Kakkanatt unemployment benefits. .

REVERSED AND REMANDED.

ADAMS, P.J., and HANSEN, J., concur.

---

**1.** By statute, gross negligence consists in the want of slight care and diligence. 25 O.S. § 6. In construing this statute, the Oklahoma Supreme Court has previously held that a finding of gross negligence requires an "intentional failure to perform a manifest duty in reckless disregard of the consequences or callous indifference to the life, liberty or property of another." *Fox v. Oklahoma Memorial Hospital,* 1989 OK 38, ¶ 5, 774 P.2d 459, 461.