2014 OK CIV APP 53

**Jeffrey A. BROYLES, Plaintiff/Appellee,**

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant/Appellant,**

and

**Howard GM, Inc., Defendant/Counter–Appellant.**

**No. 111197.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 6, 2014.

Steven A. Novick, Smolen, Smolen & Roytman, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellee.

Michael P. Royal, Fisher & Phillips LLP, Dallas, Texas, for Defendant/Counter–Appellant Howard GM, Inc. and Robert C. Newark, III, Oklahoma Employment Security Commission, Oklahoma City, Oklahoma, for Defendant/Appellant Oklahoma Employment Security Commission.

JANE P. WISEMAN, Presiding Judge.

¶ 1 Oklahoma Employment Security Commission (OESC) and Howard GM, Inc. (Employer) appeal from the trial court's order reversing the decision of OESC, the Appeal Tribunal, and the Board of Review finding that Jeffrey A. Broyles[1] was ineligible for unemployment benefits due to misconduct. Based on our review of the facts and relevant law, we reverse the order of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Broyles worked for Employer, which operates South Pointe Chevrolet and South Pointe Chrysler–Jeep–Dodge, in Tulsa, Oklahoma, from October 2007 to March 2012. In January 2011, Broyles was promoted to one of three used car managers. He testified that the general manager Chris Anderson knew he suffered from multiple sclerosis and was made aware of his physical limitations. Broyles claims that from the time he was promoted to used car manager, Derek Ellis, general sales manager, and other employees "engaged in a pattern of disability-based harassment against him" including a failure or refusal "to accommodate the limitations of his disability." After Broyles was terminated on March 10, 2012, for misconduct, he applied for unemployment benefits, which OESC denied based on misconduct.

¶ 3 When Broyles appealed the denial of unemployment benefits to the OESC Appeal Tribunal, the Appeal Tribunal conducted a telephone hearing regarding the incident leading up to Broyles' termination on March 10, 2012. The testimony was conflicting regarding what occurred on the day of the incident. Ellis testified that a customer asked Broyles for help looking at a vehicle on the lot and the following occurred:

> And when he asked that, nobody kind of reacted. Then he said it again. And [Broyles] looked up, and, in a put-out attitude with a big sigh, said, yes. He put his food aside. And then was being negative to the customer.

---

1. Broyles is incorrectly referred to in some appellate filings as "Jerry."

The guy asked him, hey, if you, you know, I don't want to interrupt your lunch. If I need to come back, I can. He said, no, I'll find somebody; don't worry about it.

And so he ran around the office, got on the paging system, paged for a sales person to come to the office in a negative tone. Now, this was happening in a negative tone with a put-out attitude. I mean, he did not want to help the customer.

Finally, a sales person came into the office from next door, and we gave the customer to that sales person.

When he got done and he went to sit down, I told him to watch his attitude with the customers and the sales people. And he mumbled some things under his breath, which I didn't hear what he said, which didn't matter to me at that point.

I told him again he needs to be respectful to the customers, and that's the reason we were here. We are here to run a business.

And, at that point, he just got, you know, started being, what I call insubordinate. Said something under his breath again. I told him if he didn't want to be here and he didn't want to change his attitude, then he could go home.

. . . .

He said, I'm tired of you being a total and complete fucking dick. And he grabbed his stuff. And he said, gladly. And he grabbed his stuff and left.

Ellis testified that when he arrived at work Monday morning, Broyles was there working, so he met with general manager Chris Anderson to inform him of the incident. Anderson advised Ellis to terminate Broyles' employment. Ellis testified that this was the sole reason Broyles was fired.

¶ 4 Broyles testified as to his recollection of the incident:

I had just sat down to eat my lunch at my desk. And a customer walked through the door and said he needed some help. And I pushed my plate aside and said, absolutely, and stood up and tried to find a sales person for him, but I couldn't find one. So I came back into the office and paged an available sales person to the sales desk. And no one came. And then that's when

Mr. Ellis told me that he was tired of me being such a dick to his customers.

I went back out of the office, still trying to find a sales person, but I quickly returned back into the office. And I told Mr. Ellis that I was tired of him being such a dick to me. And that's when he told me to go home.

Broyles denied using the phrase "fucking dick" when referring to Ellis. Broyles testified he did not believe he had been fired that day when Ellis sent him home. Employer witnesses Chris Cox and Tim Markland, who were present during the incident, also testified they only heard Broyles use the word "dick."

¶ 5 Broyles further testified it was common for Ellis to swear a lot when talking to Broyles or the other managers and for that reason he didn't think calling Ellis a "dick" would jeopardize his job. Broyles testified he witnessed another employee calling Ellis the same or similar names and nothing happened to that employee.

¶ 6 Testimony further revealed that swearing at work was common among the employees. Ellis testified:

Mr. Novick: Is swearing among the workers at [GM] a common occurrence?

. . . .

Mr. Ellis: I suppose it happens now and then.

Mr. Novick: You use that word "fucking" a lot, don't you?

Mr. Ellis: I've probably used it a few times, yeah. So do a lot of people, I guess. As did [Broyles], as well. He did-a very common practice.

Employer witness Markland agreed that cursing at work is "normal" including the use of words like "fuck" and "shit."

¶ 7 On May 21, 2012, the Appeal Tribunal issued its Order of Decision affirming OESC's decision denying Broyles unemployment benefits. In its order, the Appeal Tribunal stated Broyles had never been formally warned for similar behavior before this incident. However, Broyles had been "involved in similar altercations with the same member of management, during which he had not

called this member of management a curse word directly, before the final incident." The Appeal Tribunal further stated that his "work environment was extremely difficult to work in at times and cursing in speech of workers was a common occurrence during [Broyles'] employment." The Appeal Tribunal further found:

[Broyles] was discharged for misconduct connected to work. [Broyles] argued that personal illness and the related fatigue of this illness along with a hostile work environment, in which cursing was the norm, was what caused his behavior in the final incident. However, [Broyles] had confronted this manager before while employed but never before cursed directly at him indicating that he knew, as would be commonly known by all, that calling a member of management a curse word to their face could result in immediate termination. In addition, [Broyles] had shown the ability to control his behavior in similar circumstances in the same environment while dealing with the same illness and fatigue before the final incident. [Broyles'] choice to allow himself to react in an extremely disrespectful manner towards management, while having to be aware this could cost his job, demonstrates a deliberate disregard of the standard of behavior that the employer has the right to expect of its employees as required to find misconduct. In addition, some behaviors, such as this and instances of theft, are so extreme and detrimental to the employer's interests that they cannot be allowed to continue after the first occurrence. Benefits are disallowed.

Pursuant to 40 O.S. § 2–406, the Appeal Tribunal disallowed benefits based on Broyles' misconduct and affirmed the Commission's determination. Broyles appealed this decision to the Board of Review.

¶ 8 On July 5, 2012, the Board of Review issued an order affirming the decision of the Appeal Tribunal. Broyles then appealed to the Tulsa County District Court.

¶ 9 After review of the record and relevant law, the trial court overruled the decision of the Commission, the Appeal Tribunal and the Board of Review. Relying on an Oklahoma Court of Civil Appeals' opinion, *Vogle v. Oklahoma Employment Security Commission,* 1991 OK CIV APP 84, 817 P.2d 268, the trial court considered this case to be similar to the facts in *Vogle* finding as follows:

In a similar case, *Vogle v. Oklahoma Employment Sec. Com'n,* 817 P.2d 268 (Okla. Civ.App.1991), the employee had taken perfume samples without following protocol and it was considered theft. She was denied benefits. However, the Court of Civil Appeals found that the act of taking the samples was "common practice." As in this case, cussing at each other was "common practice."

Also in *Vogle,* the claimant had never been formally reprimanded or broken the rule before when she had taken samples. In our case, [Broyles] was never formally reprimanded and had never cussed before at his boss.

The *Vogle* Court found that the "claimant may not have used good judgment in the matter ..." and "misconduct has been proven." However, the Court found that the "misconduct was not detrimental to her employer's interest." It was determined to be an instance of ordinary negligence giving grounds for dismissal, but not a necessary denial of benefits.

[Broyles] did act inappropriately and misconduct is found to have been proven. This Court cannot find that his choice of a cuss word, which is frequently used by his boss, is anything but a negligent choice of words that in no way is detrimental to the employer. Not one customer heard the argument, but only other co-workers who also cuss and who were in on giving [Broyles] a hard time at work. [Broyles] made a poor decision and should have never spoken to his boss in that manner. However, a denial of benefits is not appropriate under the law.

OESC and Employer appeal.

**STANDARD OF REVIEW**

¶ 10 On appeal, "the findings of the Board of Review as to the facts, if supported by evidence, shall be conclusive and the jurisdiction of the court shall be confined to questions of law." 40 O.S.2011 § 2–610(A).

"This Court's standard of review on appeal is the same as that of the trial court." *Gilchrist v. Board of Review of the Oklahoma Emp't Sec. Comm'n*, 2004 OK 47, ¶ 6, 94 P.3d 72. "Further, the question of what constitutes 'misconduct' sufficient to deprive a terminated employee of entitlement to unemployment benefits is a question of law." *Id.*

¶ 11 Furthermore, "[s]tatutory construction presents a question of law which we review *de novo.*" *Curry v. Streater*, 2009 OK 5, ¶ 8, 213 P.3d 550.

## PROCEDURAL ISSUE

¶ 12 As a procedural matter, Broyles filed a motion to dismiss Employer's appeal arguing that it should "be dismissed on grounds of waiver and abandonment, and that its Brief in Chief be stricken." Broyles asserts that because Employer did not enter an appearance or file an answer in the action for judicial review before the trial court, it has waived or abandoned its right to appeal the trial court's decision. Broyles appears to be arguing that Employer has no standing to appeal the trial court's decision because it did not participate in the trial court proceedings. Broyles did not cite any legal authority to support this argument. "A proposition which is unsupported by citation to authority will not be considered on appeal." *Hough v. Hough*, 2004 OK 45, ¶ 16, 92 P.3d 695; *see also* Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S.2011 ch. 15, app. 1 ("Argument without supporting authority will not be considered.").

¶ 13 Despite this omission, we conclude Employer has standing to appeal the trial court's decision. Title 40, section 2–610(C) states in part that "[a]n appeal may be taken from the decision of the district court to the Supreme Court of this state in the same manner as is provided in other civil cases." 40 O.S.2011 § 2–610(c). Oklahoma Supreme Court Rule 1.27(a), 12 O.S.2011 ch. 15, app. 1, provides in relevant part:

If a petition in error has been timely filed to commence an appeal from an appealable decision, *then a party aggrieved by the same decision* may file a petition in error

within forty (40) days of the date the judgment was filed with the district court clerk. (Emphasis added.)

¶ 14 OESC filed a petition in error to commence an appeal of the trial court's October 5, 2012, order. Soon thereafter, Employer as an "aggrieved party" timely filed a petition in error pursuant to Supreme Court Rule 1.27(a). Employer argues that it has been aggrieved by the trial court's order allowing unemployment benefits because it "could be assessed wage charges which would adversely affect its ongoing unemployment rate" pursuant to "40 O.S.2001 § 3–107." OESC also states that "[t]he Commission uses benefit wage charges as a factor in the determination of unemployment tax rates for employer" and the trial court's decision "would allow for a benefit wage charge to be assessed against [Employer]." Employer may proceed with its appeal.

## ANALYSIS

### I. 75 O.S. § 321.

¶ 15 OESC argues the trial court erred by failing to allow oral argument and briefing as permitted by 75 O.S. § 321. This provision states:

The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. *The court, upon request, shall hear oral argument and receive written briefs.*

75 O.S.2011 § 321 (emphasis added). OESC asserts that because Broyles requested a "briefing schedule and [to] set a date for oral argument" in his Petition for Judicial Review and because OESC reserved "the right to submit a brief in this matter pursuant to 75 O.S. § 321," the trial court was statutorily required to receive written briefs and hear oral argument in the matter.

¶ 16 In *Walker v. Oklahoma Department of Human Services*, 2001 OK CIV APP 107, 32 P.3d 881, a case relied on by OESC, appellant complained the trial court failed to hear oral argument despite her request set forth in the "Certificate of Appeal." *Id.* ¶¶ 6,

8. The Court of Civil Appeals found as follows:

> The prayer in Appellant's "Certificate of Appeal" in the district court contained a request for a hearing, and we find it was a sufficient request for oral argument. The district court erred in issuing its order determining the appeal without oral argument.
>
> . . . .
>
> We do not reach the merits of this appeal, as we hold Appellant was entitled to oral argument before the district court. We do not decide whether Appellant's allegations of improper admission of evidence are meritorious. However, Appellant had a statutory right to present such allegations, and the trial court shall decide at that time if further testimony is warranted.

*Id.* ¶¶ 8, 10.

¶ 17 The language contained in § 321 plainly states that upon request, the trial court shall allow the parties to submit written briefs and present oral argument. "Courts will give the words of the statute their plain and ordinary meaning, unless a contrary intention plainly appears." *Redmond v. Cauthen,* 2009 OK CIV APP 46, ¶ 5, 211 P.3d 233. "When the words of a statute are plain and unambiguous, no occasion exists to employ the rules of construction." *Id.*

¶ 18 OESC never requested the right to submit a brief triggering the mandates of the statute. OESC merely "reserved" its right to make such a request at a later date. OESC filed its answer on August 31, 2012, and the trial court issued its order on October 5, 2012. Although it had ample opportunity to request submission of a brief for consideration by the court, OESC never made such a request and cannot now be heard to complain that § 321 was not complied with.

¶ 19 We further conclude that although Broyles requested a briefing schedule and oral argument in his Petition for Judicial Review, he elected not to advance this statutory right. If Broyles elected not to advance this right, OESC cannot base its entitlement to briefing and oral argument upon Broyles' request in his Petition for Judicial Review.

We conclude the trial court did not violate the mandates of 75 O.S.2011 § 321 as it applies to submission of briefs and presentation of oral argument.

## II. Misconduct

¶ 20 OESC and Employer both argue the trial court erred in reversing the Board of Review's order denying unemployment benefits due to misconduct. Title 40 O.S. 2011 § 2-406 states that an employee "shall be disqualified for benefits if he has been discharged for misconduct connected with his last work, if so found by the Commission." Misconduct has been defined as:

> "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute."

*Vester v. Board of Review of Oklahoma Emp't Sec. Comm'n,* 1985 OK 21, ¶ 12, 697 P.2d 533 (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941)).

¶ 21 "Subsequent to *Vester's* establishment of a working definition of misconduct, the Oklahoma Supreme Court has held that under this standard an element of *deliberate* behavior must exist to establish misconduct sufficient to deny unemployment compensation." *Kakkanatt v. Oklahoma Emp't Sec. Comm'n,* 2008 OK CIV APP 38, ¶ 12, 183 P.3d 1032 (citing *Farm Fresh Dairy, Inc. v. Blackburn,* 1992 OK 148, ¶ 11, 841 P.2d 1150).

> [T]he misconduct standard contemplates *both* the nature of the act undertaken by the employee and the employee's state of

mind at the time the event(s) occurred. As has been succinctly stated by the Washington Court of Appeals under a misconduct standard similar to our own: "(I)intentional misconduct *is* disqualifying; a single instance of ordinary work-related negligence *is not* disqualifying; and repeated instances of ordinary work-related negligence *may be* disqualifying." (Emphasis in Original.) *Johnson v. Employment Security Department,* 64 Wash.App., 311[,] 824 P.2d 505, 507 (1992), citing *Macey v. Department of Employment Security,* 110 Wash.2d 308, 752 P.2d 372, 377–378 (1988).

*Id.* ¶ 14.

■ ¶ 22 On the other hand, "[c]onduct exempted from the foregoing definition is 'mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith error in judgment or discretion.'" *Vogle v. Oklahoma Emp't Sec. Comm'n,* 1991 OK CIV APP 84, ¶ 13, 817 P.2d 268 (quoting *Vester v. Board of Review of Oklahoma Emp't Sec. Comm'n,* 1985 OK 21, ¶ 12, 697 P.2d 533).

¶ 23 In the present case, the Board of Review's findings of fact, which it adopted from the Appeal Tribunal, are supported by the evidence.[2] Pursuant to 40 O.S.2011 § 2–610, these findings shall be treated as conclusive. Thus, the trial court's only duty was to determine if those facts supported the legal conclusion that Broyles had engaged in the type of misconduct to deny him unemployment benefits.

¶ 24 In its order, the Appeal Tribunal found that Broyles "was terminated for calling a member of management a 'dick' directly to his face." The Appeal Tribunal found Broyles had never been "formally warned for similar behavior before the final incident." Broyles had also had other "altercations with the same member of management" before this incident but had never called him a derogatory name. The Appeal Tribunal further recognized that the "work environment

was extremely difficult to work in at times and cursing in speech of workers was a common occurrence" during Broyles' employment.

¶ 25 Based on these facts, the Appeal Tribunal concluded that Broyles' "choice to allow himself to react in an extremely disrespectful manner towards management, while having to be aware this could cost his job, demonstrates a deliberate disregard of the standard of behavior that the employer has the right to expect of its employees as required to find misconduct."

¶ 26 Because our research reveals no similar Oklahoma cases addressing whether offensive language directed toward a supervisor constitutes misconduct so as to deny unemployment benefits, we look to other jurisdictions having a similar definition of misconduct.

¶ 27 In Michigan, the courts adopted the same definition of misconduct set forth in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), and when applying this definition to the use of profane language stated as follows:

> In looking at the use of vulgar or abusive language, we conclude that the use of such language can constitute employee misconduct. Certainly such conduct is wilful and deliberate since the employee can choose which words to use and, we believe, it violates the standards of behavior that an employer can reasonably expect from his employees. That is, we believe an employer has the right to expect his employees to act with a certain amount of civility towards management personnel and, for that matter, fellow employees. Of course, every use of a vulgar epithet does not necessarily constitute misconduct. Rather, the totality of the circumstances of the case must be considered in determining if the use of vulgar or abusive language constitutes misconduct. Thus, we must look to the words used and the context in which the words are spoken in determining whether an employee has engaged in mis-

---

2. In his appellate brief, Broyles states "[a]s did the district court, Broyles accepts the findings of fact of the agency, but argues that the conclusions made by the agency based upon those facts are simply not supported by competent substantial evidence and are clearly erroneous."

conduct. In looking at the totality of the circumstances, various considerations should be taken into account. Whether the use of vulgar or abusive language constitutes misconduct depends upon a variety of factors, including considerations such as whether the words were directed at a fellow employee, a supervisor, or a customer, whether the tone and context suggests an abusive intent or friendly badgering, whether the comments were made in a private conversation or in the presence of others, and whether such conduct has been condoned in the past.

*Broyles v. Aeroquip Corp.*, 176 Mich.App. 175, 438 N.W.2d 888, 890 (1989).

¶ 28 In Iowa, the administrative code definition of misconduct is similar and when applying this definition to the use of offensive language stated as follows:

> This court recognizes an employer's right to expect decency and civility from its employees.... The use of profanity or offensive language in a confrontational, disrespectful, or name-calling context, may be recognized as misconduct, even in the case of isolated incidents or situations in which the target of abusive name-calling is not present when the vulgar statements are initially made. The question of whether the use of improper language in the workplace is misconduct is nearly always a fact question. It must be considered with other relevant factors, including the context in which it is said, and the general work environment. Therefore, whether the event is misconduct is most generally a decision for the agency.

*Myers v. Employment Appeal Bd.*, 462 N.W.2d 734, 738 (Iowa Ct.App.1990).

¶ 29 In Minnesota, the courts have also adopted a similar definition of misconduct. In *Cavalier v. C. Machine Co., Inc.*, 404 N.W.2d 391 (Minn.Ct.App.1987), the appellate court found that an employee's series of actions on a particular day amounted to misconduct disqualifying him from receiving unemployment benefits. These actions included using a work computer to do homework twice in one day without permission, lying about the use of the computer, and the employee's refusal to "read and acknowledge

the warning notice which [his boss] attempted to hand him," instead stating to his manager, "F* * * you. Stick it up your a* *, Whiskey Breath." *Id.* at 392–94. The appellate court held that "[w]hile, by itself, we might have characterized [employee's] language as a single hotheaded incident, in fact that language was the last incident in a series of conduct evidencing a disregard for the employer's interests." *Id.* at 394. The appellate court concluded that the profane language was the "last straw," rather than a "single hotheaded incident" and affirmed the denial of benefits. *Id.*

¶ 30 Even though the definition of "misconduct" in Kansas is a more relaxed standard than that used in Oklahoma, we may consider the same factors to determine whether it meets Oklahoma's definition of misconduct. In *Siler v. Kansas Employment Security Board of Review*, 31 Kan.App.2d 1071, 77 P.3d 1002 (2003), the Kansas Appeals Court considered the following to determine whether the offensive language amounted to misconduct disqualifying the employee from unemployment benefits:

> (i) severity of the language used; (ii) quantity of the language used; (iii) whether the language was spoken in the presence of customers, clients, or other employees; (iv) whether the employee has a record of such misconduct; (v) whether prior warnings were given; (vi) whether the language was provoked by the employer; (vii) whether the language was accompanied by threat of violence; and (viii) whether the language was accompanied by material and substantial disobedience.

*Id.* at 1006.

¶ 31 Clearly, the issue of whether the use of offensive language in the workplace constitutes misconduct for purposes of allowing or disallowing unemployment compensation benefits has been litigated extensively in other jurisdictions, and these cases provide helpful analyses. In most cases, the surrounding circumstances determine whether the employee's offensive language constitutes disqualifying misconduct. This requires the consideration of several factors including, but not limited to, those identified in the above cases.

¶ 32 The undisputed facts demonstrate that Broyles had never been formally warned for similar behavior in the past and had never cursed directly at his supervisor before this incident. Additionally, cursing was common in the workplace during his employment. However, when Broyles cursed at his supervisor during the incident at issue, he was overheard by two employees, and the language used was not in the context of "friendly badgering" but was used in a confrontational and disrespectful manner.

¶ 33 The Board of Review could reasonably determine that Broyles' conduct was a deliberate disregard of the standards of behavior Employer has a right to expect from its employees because an employer has a right to expect employees will not be disrespectful and use profanity directed toward a supervisor. Broyles' conduct can reasonably be considered to be deliberate because he chose the words to use when confronting his supervisor. We therefore cannot conclude, as did the trial court, that Broyles' conduct is merely "a negligent choice of words that in no way is detrimental to the employer." For this reason, we conclude it was error to reverse the Board of Review's decision. Accordingly, we must reverse the trial court's order and reinstate the Board of Review's decision.

## CONCLUSION

¶ 34 The order of the trial court reversing the Board of Review's decision is reversed, and the Board of Review's decision is reinstated.

¶ 35 **REVERSED.**

BARNES, C.J. and GOODMAN, J., concur.