OSCN Found Document:BROYLES v. OKLAHOMA EMPLOYMENT SECURITY COMMISSION

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BROYLES v. OKLAHOMA EMPLOYMENT SECURITY COMMISSION
2014 OK CIV APP 53
Case Number: 111197
Decided: 05/06/2014
Mandate Issued: 05/28/2014
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2014 OK CIV APP 53, __ P.3d __

JEFFREY A. BROYLES, Plaintiff/Appellee,
v.
OKLAHOMA 
EMPLOYMENT SECURITY COMMISSION, Defendant/Appellant,
and
HOWARD GM, INC., 
Defendant/Counter-Appellant.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA
HONORABLE DANA L. KUEHN, TRIAL JUDGE

REVERSED

Steven A. Novick, SMOLEN, SMOLEN & ROYTMAN, PLLC, Tulsa, Oklahoma, for 
Plaintiff/Appellee
Michael P. Royal, FISHER & PHILLIPS LLP, Dallas, 
Texas, for Defendant/Counter-Appellant Howard GM, Inc.
and Robert C. Newark, 
III, OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Oklahoma City, Oklahoma, for 
Defendant/Appellant Oklahoma Employment Security Commission


JANE P. WISEMAN, PRESIDING JUDGE:
¶1 Oklahoma Employment Security Commission (OESC) and Howard GM, Inc. 
(Employer) appeal from the trial court's order reversing the decision of OESC, 
the Appeal Tribunal, and the Board of Review finding that Jeffrey A. Broyles[1] was ineligible 
for unemployment benefits due to misconduct. Based on our review of the facts 
and relevant law, we reverse the order of the trial court.
FACTS AND PROCEDURAL BACKGROUND
¶2 Broyles worked for Employer, which operates South Pointe Chevrolet and 
South Pointe Chrysler-Jeep-Dodge, in Tulsa, Oklahoma, from October 2007 to March 
2012. In January 2011, Broyles was promoted to one of three used car managers. 
He testified that the general manager Chris Anderson knew he suffered from 
multiple sclerosis and was made aware of his physical limitations. Broyles 
claims that from the time he was promoted to used car manager, Derek Ellis, 
general sales manager, and other employees "engaged in a pattern of 
disability-based harassment against him" including a failure or refusal "to 
accommodate the limitations of his disability." After Broyles was terminated on 
March 10, 2012, for misconduct, he applied for unemployment benefits, which OESC 
denied based on misconduct.
¶3 When Broyles appealed the denial of unemployment benefits to the OESC 
Appeal Tribunal, the Appeal Tribunal conducted a telephone hearing regarding the 
incident leading up to Broyles' termination on March 10, 2012. The testimony was 
conflicting regarding what occurred on the day of the incident. Ellis testified 
that a customer asked Broyles for help looking at a vehicle on the lot and the 
following occurred:

 
 And when he asked that, nobody kind of reacted. Then he said it again. 
 And [Broyles] looked up, and, in a put-out attitude with a big sigh, said, 
 yes. He put his food aside. And then was being negative to the customer.
 The guy asked him, hey, if you, you know, I don't want to interrupt your 
 lunch. If I need to come back, I can. He said, no, I'll find somebody; don't 
 worry about it.
 And so he ran around the office, got on the paging system, paged for a 
 sales person to come to the office in a negative tone. Now, this was 
 happening in a negative tone with a put-out attitude. I mean, he did not 
 want to help the customer.
 Finally, a sales person came into the office from next door, and we gave 
 the customer to that sales person.
 When he got done and he went to sit down, I told him to watch his 
 attitude with the customers and the sales people. And he mumbled some things 
 under his breath, which I didn't hear what he said, which didn't matter to 
 me at that point.
 I told him again he needs to be respectful to the customers, and that's 
 the reason we were here. We are here to run a business.
 And, at that point, he just got, you know, started being, what I call 
 insubordinate.
 Said something under his breath again. I told him if he didn't want to be 
 here and he didn't want to change his attitude, then he could go home.
 . . . .
 He said, I'm tired of you being a total and complete fucking dick. And he 
 grabbed his stuff. And he said, gladly. And he grabbed his stuff and 
 left.
Ellis testified that when he arrived at work Monday morning, Broyles was 
there working, so he met with general manager Chris Anderson to inform him of 
the incident. Anderson advised Ellis to terminate Broyles' employment. Ellis 
testified that this was the sole reason Broyles was fired.
¶4 Broyles testified as to his recollection of the incident:

 
 I had just sat down to eat my lunch at my desk. And a customer walked 
 through the door and said he needed some help. And I pushed my plate aside 
 and said, absolutely, and stood up and tried to find a sales person for him, 
 but I couldn't find one.
 So I came back into the office and paged an available sales person to the 
 sales desk. And no one came. And then that's when Mr. Ellis told me that he 
 was tired of me being such a dick to his customers.
 I went back out of the office, still trying to find a sales person, but I 
 quickly returned back into the office. And I told Mr. Ellis that I was tired 
 of him being such a dick to me. And that's when he told me to go 
 home.
Broyles denied using the phrase "fucking dick" when referring to Ellis. 
Broyles testified he did not believe he had been fired that day when Ellis sent 
him home. Employer witnesses Chris Cox and Tim Markland, who were present during 
the incident, also testified they only heard Broyles use the word "dick."
¶5 Broyles further testified it was common for Ellis to swear a lot when 
talking to Broyles or the other managers and for that reason he didn't think 
calling Ellis a "dick" would jeopardize his job. Broyles testified he witnessed 
another employee calling Ellis the same or similar names and nothing happened to 
that employee.
¶6 Testimony further revealed that swearing at work was common among the 
employees. Ellis testified:

 
 Mr. Novick: Is swearing among the workers at [GM] a common 
occurrence?
 . . . .
 Mr. Ellis: I suppose it happens now and then.
 Mr. Novick: You use that word "fucking" a lot, don't you?
 Mr. Ellis: I've probably used it a few times, yeah. So do a lot of 
 people, I guess. As did [Broyles], as well. He did--a very common 
 practice.
Employer witness Markland agreed that cursing at work is "normal" including 
the use of words like "fuck" and "shit."
¶7 On May 21, 2012, the Appeal Tribunal issued its Order of Decision 
affirming OESC's decision denying Broyles unemployment benefits. In its order, 
the Appeal Tribunal stated Broyles had never been formally warned for similar 
behavior before this incident. However, Broyles had been "involved in similar 
altercations with the same member of management, during which he had not called 
this member of management a curse word directly, before the final incident." The 
Appeal Tribunal further stated that his "work environment was extremely 
difficult to work in at times and cursing in speech of workers was a common 
occurrence during [Broyles'] employment." The Appeal Tribunal further found:

 
 [Broyles] was discharged for misconduct connected to work. [Broyles] 
 argued that personal illness and the related fatigue of this illness along 
 with a hostile work environment, in which cursing was the norm, was what 
 caused his behavior in the final incident. However, [Broyles] had confronted 
 this manager before while employed but never before cursed directly at him 
 indicating that he knew, as would be commonly known by all, that calling a 
 member of management a curse word to their face could result in immediate 
 termination. In addition, [Broyles] had shown the ability to control his 
 behavior in similar circumstances in the same environment while dealing with 
 the same illness and fatigue before the final incident. [Broyles'] choice to 
 allow himself to react in an extremely disrespectful manner towards 
 management, while having to be aware this could cost his job, demonstrates a 
 deliberate disregard of the standard of behavior that the employer has the 
 right to expect of its employees as required to find misconduct. In 
 addition, some behaviors, such as this and instances of theft, are so 
 extreme and detrimental to the employer's interests that they cannot be 
 allowed to continue after the first occurrence. Benefits are 
 disallowed.
Pursuant to 40 O.S. § 2-406, 
the Appeal Tribunal disallowed benefits based on Broyles' misconduct and 
affirmed the Commission's determination. Broyles appealed this decision to the 
Board of Review.
¶8 On July 5, 2012, the Board of Review issued an order affirming the 
decision of the Appeal Tribunal. Broyles then appealed to the Tulsa County 
District Court.
¶9 After review of the record and relevant law, the trial court overruled the 
decision of the Commission, the Appeal Tribunal and the Board of Review. Relying 
on an Oklahoma Court of Civil Appeals' opinion, Vogle v. Oklahoma Employment 
Security Commission, 1991 OK CIV 
APP 84, 817 P.2d 268, the 
trial court considered this case to be similar to the facts in Vogle 
finding as follows:

 
 In a similar case, Vogle v. Oklahoma Employment Sec. Com'n, 817 P.2d 268 (Okla. Civ. App. 
 1991), the employee had taken perfume samples without following protocol and 
 it was considered theft. She was denied benefits. However, the Court of 
 Civil Appeals found that the act of taking the samples was "common 
 practice." As in this case, cussing at each other was "common practice."
 Also in Vogle, the claimant had never been formally reprimanded or 
 broken the rule before when she had taken samples. In our case, [Broyles] 
 was never formally reprimanded and had never cussed before at his boss.
 The Vogle Court found that the "claimant may not have used good 
 judgment in the matter . . ." and "misconduct has been proven." However, the 
 Court found that the "misconduct was not detrimental to her employer's 
 interest." It was determined to be an instance of ordinary negligence giving 
 grounds for dismissal, but not a necessary denial of benefits.
 [Broyles] did act inappropriately and misconduct is found to have been 
 proven. This Court cannot find that his choice of a cuss word, which is 
 frequently used by his boss, is anything but a negligent choice of words 
 that in no way is detrimental to the employer. Not one customer heard the 
 argument, but only other co-workers who also cuss and who were in on giving 
 [Broyles] a hard time at work. [Broyles] made a poor decision and should 
 have never spoken to his boss in that manner. However, a denial of benefits 
 is not appropriate under the law.
OESC and Employer appeal.
STANDARD OF REVIEW
¶10 On appeal, "the findings of the Board of Review as to the facts, if 
supported by evidence, shall be conclusive and the jurisdiction of the court 
shall be confined to questions of law." 40 O.S.2011 § 2-610(A). "This 
Court's standard of review on appeal is the same as that of the trial court." 
Gilchrist v. Board of Review of the Oklahoma Emp't Sec. Comm'n, 2004 OK 47, ¶ 6, 94 P.3d 72. "Further, the question 
of what constitutes 'misconduct' sufficient to deprive a terminated employee of 
entitlement to unemployment benefits is a question of law." Id.
¶11 Furthermore, "[s]tatutory construction presents a question of law which 
we review de novo." Curry v. Streater, 2009 OK 5, ¶ 8, 213 P.3d 550.
PROCEDURAL ISSUE
¶12 As a procedural matter, Broyles filed a motion to dismiss Employer's 
appeal arguing that it should "be dismissed on grounds of waiver and 
abandonment, and that its Brief in Chief be stricken." Broyles asserts that 
because Employer did not enter an appearance or file an answer in the action for 
judicial review before the trial court, it has waived or abandoned its right to 
appeal the trial court's decision. Broyles appears to be arguing that Employer 
has no standing to appeal the trial court's decision because it did not 
participate in the trial court proceedings. Broyles did not cite any legal 
authority to support this argument. "A proposition which is unsupported by 
citation to authority will not be considered on appeal." Hough v. Hough, 
2004 OK 45, ¶ 16, 92 P.3d 695; see also 
Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S.2011 ch. 15, app. 1 ("Argument 
without supporting authority will not be considered.").
¶13 Despite this omission, we conclude Employer has standing to appeal the 
trial court's decision. Title 40, section 2-610(C) states in part that "[a]n 
appeal may be taken from the decision of the district court to the Supreme Court 
of this state in the same manner as is provided in other civil cases." 40 O.S.2011 § 2-610(c). Oklahoma 
Supreme Court Rule 1.27(a), 12 O.S.2011 ch. 15, app. 1, provides in relevant 
part:

 
 If a petition in error has been timely filed to commence an appeal from 
 an appealable decision, then a party aggrieved by the same decision 
 may file a petition in error within forty (40) days of the date the judgment 
 was filed with the district court clerk.
(Emphasis added.)
¶14 OESC filed a petition in error to commence an appeal of the trial court's 
October 5, 2012, order. Soon thereafter, Employer as an "aggrieved party" timely 
filed a petition in error pursuant to Supreme Court Rule 1.27(a). Employer 
argues that it has been aggrieved by the trial court's order allowing 
unemployment benefits because it "could be assessed wage charges which would 
adversely affect its ongoing unemployment rate" pursuant to "40 O.S. 2001 § 3-107." OESC also 
states that "[t]he Commission uses benefit wage charges as a factor in the 
determination of unemployment tax rates for employer" and the trial court's 
decision "would allow for a benefit wage charge to be assessed against 
[Employer]." Employer may proceed with its appeal.
ANALYSIS
I. 75 O.S. § 321. 

¶15 OESC argues the trial court erred by failing to allow oral argument and 
briefing as permitted by 75 O.S. § 
321. This provision states:

 
 The review shall be conducted by the court without a jury and shall be 
 confined to the record, except that in cases of alleged irregularities in 
 procedure before the agency, not shown in the record, testimony thereon may 
 be taken in the court. The court, upon request, shall hear oral argument 
 and receive written briefs.
75 O.S.2011 § 321 (emphasis 
added). OESC asserts that because Broyles requested a "briefing schedule and 
[to] set a date for oral argument" in his Petition for Judicial Review and 
because OESC reserved "the right to submit a brief in this matter pursuant to 75 O.S. § 321," the trial court was 
statutorily required to receive written briefs and hear oral argument in the 
matter.
¶16 In Walker v. Oklahoma Department of Human Services, 2001 OK CIV APP 107, 32 P.3d 881, a case relied on by 
OESC, appellant complained the trial court failed to hear oral argument despite 
her request set forth in the "Certificate of Appeal." Id. ¶¶ 6, 8. The 
Court of Civil Appeals found as follows:

 
 The prayer in Appellant's "Certificate of Appeal" in the district court 
 contained a request for a hearing, and we find it was a sufficient request 
 for oral argument. The district court erred in issuing its order determining 
 the appeal without oral argument.
 . . . .
 We do not reach the merits of this appeal, as we hold Appellant was 
 entitled to oral argument before the district court. We do not decide 
 whether Appellant's allegations of improper admission of evidence are 
 meritorious. However, Appellant had a statutory right to present such 
 allegations, and the trial court shall decide at that time if further 
 testimony is warranted.
Id. ¶¶ 8, 10.
¶17 The language contained in § 321 plainly states that upon request, the 
trial court shall allow the parties to submit written briefs and present oral 
argument. "Courts will give the words of the statute their plain and ordinary 
meaning, unless a contrary intention plainly appears." Redmond v. 
Cauthen, 2009 OK CIV APP 46, 
¶ 5, 211 P.3d 233. "When the 
words of a statute are plain and unambiguous, no occasion exists to employ the 
rules of construction." Id.
¶18 OESC never requested the right to submit a brief triggering the mandates 
of the statute. OESC merely "reserved" its right to make such a request at a 
later date. OESC filed its answer on August 31, 2012, and the trial court issued 
its order on October 5, 2012. Although it had ample opportunity to request 
submission of a brief for consideration by the court, OESC never made such a 
request and cannot now be heard to complain that § 321 was not complied 
with.
¶19 We further conclude that although Broyles requested a briefing schedule 
and oral argument in his Petition for Judicial Review, he elected not to advance 
this statutory right. If Broyles elected not to advance this right, OESC cannot 
base its entitlement to briefing and oral argument upon Broyles' request in his 
Petition for Judicial Review. We conclude the trial court did not violate the 
mandates of 75 O.S.2011 § 321 as 
it applies to submission of briefs and presentation of oral argument.
II. Misconduct 
¶20 OESC and Employer both argue the trial court erred in reversing the Board 
of Review's order denying unemployment benefits due to misconduct. Title 40 O.S.2011 § 2-406 states that an 
employee "shall be disqualified for benefits if he has been discharged for 
misconduct connected with his last work, if so found by the Commission." 
Misconduct has been defined as:

 
 "conduct evincing such wilful or wanton disregard of an employer's 
 interests as is found in deliberate violations or disregard of standards of 
 behavior which the employer has the right to expect of his employee, or in 
 carelessness or negligence of such degree or recurrence as to manifest equal 
 culpability, wrongful intent or evil design, or to show an intentional and 
 substantial disregard of the employer's interests or of the employee's 
 duties and obligations to his employer. On the other hand mere inefficiency, 
 unsatisfactory conduct, failure in good performance as the result of 
 inability or incapacity, inadvertencies or ordinary negligence in isolated 
 instances, or good faith errors in judgment or discretion are not to be 
 deemed "misconduct" within the meaning of the 
statute."
Vester v. Board of Review of Oklahoma Emp't Sec. Comm'n, 1985 OK 21, ¶ 12, 697 P.2d 533 (quoting Boynton Cab 
Co. v. Neubeck, 296 N.W. 636, 640 (Wis. 1941)).
¶21 "Subsequent to Vester's establishment of a working definition of 
misconduct, the Oklahoma Supreme Court has held that under this standard an 
element of deliberate behavior must exist to establish misconduct 
sufficient to deny unemployment compensation." Kakkanatt v. Oklahoma Emp't 
Sec. Comm'n, 2008 OK CIV APP 
38, ¶ 12, 183 P.3d 1032 
(citing Farm Fresh Dairy, Inc. v. Blackburn, 1992 OK 148, ¶ 11, 841 P.2d 1150).

 
 [T]he misconduct standard contemplates both the nature of the act 
 undertaken by the employee and the employee's state of mind at the time the 
 event(s) occurred. As has been succinctly stated by the Washington Court of 
 Appeals under a misconduct standard similar to our own: "(I)intentional 
 misconduct is disqualifying; a single instance of ordinary 
 work-related negligence is not disqualifying; and repeated instances 
 of ordinary work-related negligence may be disqualifying." (Emphasis 
 in Original.) Johnson v. Employment Security Department, 64 
 Wash.App., 311[,] 824 P.2d 505, 507 (1992), citing Macey v. Department of 
 Employment Security, 110 Wash.2d 308, 752 P.2d 377-378 
 (1988).
Id. ¶ 14.
¶22 On the other hand, "[c]onduct exempted from the foregoing definition is 
'mere inefficiency, unsatisfactory conduct, failure in good performance as the 
result of inability or incapacity, inadvertencies or ordinary negligence in 
isolated instances, or good faith error in judgment or discretion.'" Vogle v. 
Oklahoma Emp't Sec. Comm'n, 1991 
OK CIV APP 84, ¶ 13, 817 P.2d 
268 (quoting Vester v. Board of Review of Oklahoma Emp't Sec. Comm'n, 
1985 OK 21, ¶ 12, 697 P.2d 533).
¶23 In the present case, the Board of Review's findings of fact, which it 
adopted from the Appeal Tribunal, are supported by the evidence.[2] Pursuant to 40 O.S.2011 § 2-610, these findings 
shall be treated as conclusive. Thus, the trial court's only duty was to 
determine if those facts supported the legal conclusion that Broyles had engaged 
in the type of misconduct to deny him unemployment benefits.
¶24 In its order, the Appeal Tribunal found that Broyles "was terminated for 
calling a member of management a 'dick' directly to his face." The Appeal 
Tribunal found Broyles had never been "formally warned for similar behavior 
before the final incident." Broyles had also had other "altercations with the 
same member of management" before this incident but had never called him a 
derogatory name. The Appeal Tribunal further recognized that the "work 
environment was extremely difficult to work in at times and cursing in speech of 
workers was a common occurrence" during Broyles' employment.
¶25 Based on these facts, the Appeal Tribunal concluded that Broyles' "choice 
to allow himself to react in an extremely disrespectful manner towards 
management, while having to be aware this could cost his job, demonstrates a 
deliberate disregard of the standard of behavior that the employer has the right 
to expect of its employees as required to find misconduct."
¶26 Because our research reveals no similar Oklahoma cases addressing whether 
offensive language directed toward a supervisor constitutes misconduct so as to 
deny unemployment benefits, we look to other jurisdictions having a similar 
definition of misconduct.
¶27 In Michigan, the courts adopted the same definition of misconduct set 
forth in Boynton Cab Co. v. Neubeck, 296 N.W. 636 (Wis. 1941), and when 
applying this definition to the use of profane language stated as follows:

 
 In looking at the use of vulgar or abusive language, we conclude that the 
 use of such language can constitute employee misconduct. Certainly such 
 conduct is wilful and deliberate since the employee can choose which words 
 to use and, we believe, it violates the standards of behavior that an 
 employer can reasonably expect from his employees. That is, we believe an 
 employer has the right to expect his employees to act with a certain amount 
 of civility towards management personnel and, for that matter, fellow 
 employees. Of course, every use of a vulgar epithet does not necessarily 
 constitute misconduct. Rather, the totality of the circumstances of the case 
 must be considered in determining if the use of vulgar or abusive language 
 constitutes misconduct. Thus, we must look to the words used and the context 
 in which the words are spoken in determining whether an employee has engaged 
 in misconduct. In looking at the totality of the circumstances, various 
 considerations should be taken into account. Whether the use of vulgar or 
 abusive language constitutes misconduct depends upon a variety of factors, 
 including considerations such as whether the words were directed at a fellow 
 employee, a supervisor, or a customer, whether the tone and context suggests 
 an abusive intent or friendly badgering, whether the comments were made in a 
 private conversation or in the presence of others, and whether such conduct 
 has been condoned in the past.
Broyles v. Aeroquip Corp., 438 N.W.2d 888, 890 (Mich. Ct. App. 
1989).
¶28 In Iowa, the administrative code definition of misconduct is similar and 
when applying this definition to the use of offensive language stated as 
follows:

 
 This court recognizes an employer's right to expect decency and civility 
 from its employees. . . . The use of profanity or offensive language in a 
 confrontational, disrespectful, or name-calling context, may be recognized 
 as misconduct, even in the case of isolated incidents or situations in which 
 the target of abusive name-calling is not present when the vulgar statements 
 are initially made. The question of whether the use of improper language in 
 the workplace is misconduct is nearly always a fact question. It must be 
 considered with other relevant factors, including the context in which it is 
 said, and the general work environment. Therefore, whether the event is 
 misconduct is most generally a decision for the 
agency.
Myers v. Employment Appeal Bd., 462 N.W.2d 734, 738 (Iowa Ct. App. 
1990).
¶29 In Minnesota, the courts have also adopted a similar definition of 
misconduct. In Cavalier v. C. Machine Co., Inc., 404 N.W.2d 391 (Minn. 
Ct. App. 1987), the appellate court found that an employee's series of actions 
on a particular day amounted to misconduct disqualifying him from receiving 
unemployment benefits. These actions included using a work computer to do 
homework twice in one day without permission, lying about the use of the 
computer, and the employee's refusal to "read and acknowledge the warning notice 
which [his boss] attempted to hand him," instead stating to his manager, "F*** 
you. Stick it up your a**, Whiskey Breath." Id. at 392-94. The appellate 
court held that "[w]hile, by itself, we might have characterized [employee's] 
language as a single hotheaded incident, in fact that language was the last 
incident in a series of conduct evidencing a disregard for the employer's 
interests." Id. at 394. The appellate court concluded that the profane 
language was the "last straw," rather than a "single hotheaded incident" and 
affirmed the denial of benefits. Id.
¶30 Even though the definition of "misconduct" in Kansas is a more relaxed 
standard than that used in Oklahoma, we may consider the same factors to 
determine whether it meets Oklahoma's definition of misconduct. In Siler v. 
Kansas Employment Security Board of Review, 77 P.3d 1002 (Kan. Ct. App. 
2003), the Kansas Appeals Court considered the following to determine whether 
the offensive language amounted to misconduct disqualifying the employee from 
unemployment benefits:

 
 (i) severity of the language used; (ii) quantity of the language used; 
 (iii) whether the language was spoken in the presence of customers, clients, 
 or other employees; (iv) whether the employee has a record of such 
 misconduct; (v) whether prior warnings were given; (vi) whether the language 
 was provoked by the employer; (vii) whether the language was accompanied by 
 threat of violence; and (viii) whether the language was accompanied by 
 material and substantial disobedience.
Id. at 1006.
¶31 Clearly, the issue of whether the use of offensive language in the 
workplace constitutes misconduct for purposes of allowing or disallowing 
unemployment compensation benefits has been litigated extensively in other 
jurisdictions, and these cases provide helpful analyses. In most cases, the 
surrounding circumstances determine whether the employee's offensive language 
constitutes disqualifying misconduct. This requires the consideration of several 
factors including, but not limited to, those identified in the above cases.
¶32 The undisputed facts demonstrate that Broyles had never been formally 
warned for similar behavior in the past and had never cursed directly at his 
supervisor before this incident. Additionally, cursing was common in the 
workplace during his employment. However, when Broyles cursed at his supervisor 
during the incident at issue, he was overheard by two employees, and the 
language used was not in the context of "friendly badgering" but was used in a 
confrontational and disrespectful manner.
¶33 The Board of Review could reasonably determine that Broyles' conduct was 
a deliberate disregard of the standards of behavior Employer has a right to 
expect from its employees because an employer has a right to expect employees 
will not be disrespectful and use profanity directed toward a supervisor. 
Broyles' conduct can reasonably be considered to be deliberate because he chose 
the words to use when confronting his supervisor. We therefore cannot conclude, 
as did the trial court, that Broyles' conduct is merely "a negligent choice of 
words that in no way is detrimental to the employer." For this reason, we 
conclude it was error to reverse the Board of Review's decision. Accordingly, we 
must reverse the trial court's order and reinstate the Board of Review's 
decision.
CONCLUSION
¶34 The order of the trial court reversing the Board of Review's decision is 
reversed, and the Board of Review's decision is reinstated.

¶35 REVERSED.

BARNES, C.J. and GOODMAN, J., concur.

FOOTNOTES

[1] Broyles 
is incorrectly referred to in some appellate filings as "Jerry."

[2] In his 
appellate brief, Broyles states "[a]s did the district court, Broyles accepts 
the findings of fact of the agency, but argues that the conclusions made by the 
agency based upon those facts are simply not supported by competent substantial 
evidence and are clearly erroneous."





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1991 OK CIV APP 84, 817 P.2d 268, 62 OBJ 3139, Vogle v. Oklahoma Employment Sec. Com'n
Discussed at Length 2001 OK CIV APP 107, 32 P.3d 881, 72 OBJ 2759, WALKER v. OKLAHOMA DEPT. OF HUMAN SERVICES
Discussed 2008 OK CIV APP 38, 183 P.3d 1032, KAKKANATT v. OKLAHOMA EMPLOYMENT SECURITY COMMISSION
Discussed 2009 OK CIV APP 46, 211 P.3d 233, REDMOND v. CAUTHEN
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1992 OK 148, 841 P.2d 1150, 63 OBJ 3187, Farm Fresh Dairy, Inc. v. Blackburn
Discussed 2004 OK 45, 92 P.3d 695, HOUGH v. HOUGH
Discussed 2004 OK 47, 94 P.3d 72, GILCHRIST v. BOARD OF REVIEW OF THE OKLA. EMPLOYMENT SECURITY COMMISSION
Discussed 2009 OK 5, 213 P.3d 550, CURRY v. STREATER
Discussed 1985 OK 21, 697 P.2d 533, Vester v. Board of Review of Oklahoma Employment Sec. Com'n
Discussed at Length
Title 40. Labor Cite
Name
Level 40 O.S. 2-406, Discharge for Misconduct
Discussed 40 O.S. 2-610, Judicial Review
Discussed at Length 40 O.S. 3-107, Benefit Wage Ratio
Cited
Title 75. Statutes and Reports Cite
Name
Level 75 O.S. 321, Review Without Jury - Additional Testimony.
Discussed at Length